[No. E036144. Fourth Dist., Div. Two. July 5, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
ROSCOE DICKENS, Defendant and Respondent.

**1248**

COUNSEL

Grover Trask, District Attorney, and Elise J. Farrell, Deputy District Attorney, for Plaintiff and Appellant.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**McKINSTER, J.**—The Riverside County District Attorney (hereafter the prosecution or the district attorney) appeals from an order granting Roscoe Dickens (hereafter defendant) a new trial on a count of willful, deliberate and premeditated attempted murder. We affirm.

## PROCEDURAL HISTORY

A jury convicted defendant of the willful, deliberate and premeditated attempted murder of Bernard Gibbs (hereafter Gibbs), and found true the allegation that he personally and intentionally discharged a firearm in the commission of that offense. The jury also convicted him of assault with a firearm on Gibbs and assault with a firearm on Diane Hamilton (hereafter Hamilton). It found true the allegations that he personally and intentionally discharged a firearm in connection with the assault on Gibbs and that he personally used a firearm and intentionally inflicted great bodily injury in connection with the assault on Hamilton. A fourth count, willful discharge of a firearm in a grossly negligent manner, was dismissed during trial on motion of the prosecution.

After the verdicts and findings were returned, the defense made a motion for a new trial on the attempted murder count, on the ground of insufficient evidence to support a finding of specific intent to kill. The court granted the motion. The court deferred sentencing on the remaining counts pending the retrial. The prosecution filed a timely notice of appeal.

## FACTUAL BACKGROUND

### *The Underlying Facts*

Defendant shared an apartment with his sister, Hamilton, and Hamilton's fiancé, Gibbs. On the day in question, Hamilton and defendant had an argument in the doorway of defendant's bedroom, at the conclusion of which Hamilton sustained a gunshot wound through her right breast. Shortly after the shooting, Hamilton told police that she and defendant had argued over some items left by their recently deceased mother and over defendant's intention to move out of the apartment. During the argument, defendant pushed Hamilton. Gibbs came out of the bathroom and told defendant not to do that. He pushed defendant on the shoulder. Hamilton got in between them because she did not want them to fight. Something had been "brewing" between the two men for some time. She told Gibbs to leave and as she started to push him out of the room, she heard a "pop." A moment later, she realized she was bleeding. She said defendant did not realize what had happened. Just after she heard the shot, Gibbs said, "Oh, you want to shoot me or something?" and then left the room.[1] Hamilton said Gibbs was behind her when she heard the shot, and that she never saw a gun.

Hamilton told police that defendant was edgy and short-tempered because he was on methadone and his dosage had just been reduced. She also explained that although there were tensions between the two men, they got along fine and had never fought before.

At trial, Hamilton testified that Gibbs was not present when the shooting occurred. Rather, she said that she and defendant argued in the doorway of defendant's bedroom, and that they fell together onto a chair in the bedroom when she pushed him. When they fell, she heard a "pop" and then realized she had been shot. The expended round was lodged in the bedroom wall

---

[1] It is not clear whether "or something" is part of the statement Hamilton attributed to Gibbs.

above the chair and there were some drywall chips on the chair. She denied having seen a gun in defendant's hand, but said that she knew he had a gun in the apartment. He had bought it for protection after a killing at the apartment complex. She did not recall having told police and a paramedic that she had gotten between Gibbs and defendant. After refreshing her recollection with the transcript of her taped interview with police, she said she did not lie to the police but was in a state of shock and fear when she spoke to them at the hospital.

Immediately after the shooting, Gibbs told police in a taped interview that he tried to break up the argument between Hamilton and defendant. Defendant asked him what he was going to do. Gibbs replied, "[y]ou gonna shoot me now?" Defendant pulled out the gun. Hamilton stepped in between them and was shot. He also said he did not see a gun but "just heard a pop" and ran. He assumed it was a gun. In a portion of the interview that was apparently not tape-recorded, he told police that he was outside the apartment when he heard the gunshot. He said the argument took place near the front door of the apartment and that Hamilton pushed him outside and closed the door. He was on the front porch when he heard the shot. The gun was never pointed at him, and he never saw a gun. At trial, Gibbs testified that he lied to the police because he was angry that defendant had shot his girlfriend. He testified that he was outside taking out the garbage when Hamilton came running out and said she had been shot. She told him that she and defendant had been arguing, that they shoved each other, and that the gun had gone off from within defendant's pocket.

Josie Starks, the 10-year-old daughter of defendant's girlfriend, was at the apartment when the shooting took place. She testified that Hamilton, Gibbs and defendant were all inside the apartment when she heard the gunshot. However, she did not see the argument or the shooting, and did not know where inside the apartment any of the adults were. At trial, she did not recall having heard defendant talking on the phone after the shooting, but at the time, she told police she had heard him on the telephone saying that he tried to shoot Gibbs but that Hamilton got in the way.

*The New Trial Motion*

At the conclusion of the prosecution's case-in-chief, the defense made a motion to dismiss the attempted murder charge, based on insufficiency of the evidence that defendant specifically intended to kill Gibbs or that he premedi-

tated the attempt to do so. In ruling on the motion, the trial court said, "I struggled with the amount of evidence here, but I think there is probably enough to go to the jury at this time. So the motion will than [*sic*] denied."

After the jury returned the verdicts and findings, the defense made an oral motion for a new trial, arguing again that the evidence was insufficient to support the finding of specific intent to kill. The court granted the motion, saying, "The problem I had in this case before it went to the jury, and the problem I have with the jury's verdict in this case, relates primarily to their finding that this was a willful, deliberate, and premeditated attempted murder. [¶] I struggle[d] even at the time of the 1118 motion as to whether there is sufficient evidence of an intent to kill. I have difficulty finding an intent to kill based on this evidence. I'm going to grant a motion for new trial on Count 1."

## DISCUSSION

### *The Court Did Not Abuse Its Discretion in Granting the Motion for New Trial*[2]

Penal Code section 1181, subdivision (6) permits a defendant to move for a new trial on the ground that the verdict is contrary to the evidence. In deciding such a motion, the trial court's function is to "see that the jury intelligently and justly perform[ed] its duty and, in the exercise of a proper legal discretion, to determine whether there is sufficient credible evidence to sustain the verdict." (*People v. Robarge* (1953) 41 Cal.2d 628, 634 [262 P.2d 14] (*Robarge*).) The trial court's duty is to review the evidence independently and satisfy itself that the evidence as a whole is sufficient to sustain the verdict. (*Id.* at p. 633.)

Although the trial court is to be "guided" by a presumption in favor of the correctness of the jury's verdict (see, e.g., *People v. Davis* (1995) 10 Cal.4th 463, 523–524 [41 Cal.Rptr.2d 826, 896 P.2d 119]), this means only that the court may not *arbitrarily* reject a verdict which is supported by substantial evidence. The trial court is not bound by the jury's determinations as to the credibility of witnesses or as to the weight or effect to be accorded to the evidence. (*Robarge, supra*, 41 Cal.2d at pp. 633–634; *People v. Sheran*

---

[2] At oral argument, it was suggested that an oral motion for new trial is improper. In fact, in criminal cases new trial motions may be either written or oral. (*People v. Braxton* (2004) 34 Cal.4th 798, 807 [22 Cal.Rptr.3d 46, 101 P.3d 994].)

(1957) 49 Cal.2d 101, 109–110 [315 P.2d 5].) Thus, the presumption that the verdict is correct does not affect the trial court's duty to give the defendant the benefit of its independent determination as to the probative value of the evidence. (*Robarge, supra,* 41 Cal.2d at pp. 633–634.) If the court finds that the evidence is not sufficiently probative to sustain the verdict, it must order a new trial. (*Id.* at p. 633; *People v. Knutte* (1896) 111 Cal. 453, 455 [44 P. 166].)

█ The trial court has broad discretion in determining whether the evidence has sufficient probative value to sustain the verdict (*Robarge, supra,* 41 Cal.2d at p. 633), and its order will not be reversed on appeal "absent a manifest and unmistakable abuse of that discretion." (*People v. Lewis* (2001) 26 Cal.4th 334, 364 [110 Cal.Rptr.2d 272, 28 P.3d 34].) In reviewing an order granting a new trial based on insufficiency of the evidence, the appellate court reviews the evidence in the light most favorable to the trial court's ruling, drawing all factual inferences that favor the trial court's decision. (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1303–1304 [7 Cal.Rptr.3d 161]; *People v. Andrade* (2000) 79 Cal.App.4th 651, 659 [94 Cal.Rptr.2d 314].) The trial court's factual findings, express or implied, will be upheld if supported by any substantial evidence. (*People v. Drake* (1992) 6 Cal.App.4th 92, 97 [7 Cal.Rptr.2d 790].) The order will be reversed only if it can be said as a matter of law that there is no substantial evidence to support a judgment contrary to the verdict. (*People v. Sheran, supra,* 49 Cal.2d at p. 109.)[3]

The district attorney's argument on appeal can be summarized as follows: Because the trial court failed to articulate its reasons for finding the evidence insufficient, and because the jury's verdict was supported by substantial evidence, we should conclude that the court had no justifiable basis for granting the motion and that it therefore abused its discretion.

---

[3] Our Supreme Court created a dilemma by stating on the one hand that the trial court must "consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict," and on the other that the court should not "disregard the verdict" or "decide what result it would have reached if the case had been tried without a jury." (*Robarge, supra,* 41 Cal.2d at p. 633; see also *People v. Davis, supra,* 10 Cal.4th at pp. 523–524 [trial court's exercise of discretion must be "guided" by presumption that verdict is correct].) It is conceptually difficult both to give deference to the jury's verdict and to independently determine whether the verdict is supported by sufficient credible evidence and overrule the verdict if it is not supported by such evidence. Nevertheless, *Robarge* and the other cases we have cited make it abundantly clear that a decision to grant a new trial on the basis of insufficient evidence is an abuse of discretion only if it is arbitrary or irrational, and that such a decision is not arbitrary or irrational if a reasonable trier of fact could have reached a result different from that reached by the jury.

The source of these arguments is *People v. Taylor* (1993) 19 Cal.App.4th 836 [23 Cal.Rptr.2d 846] (*Taylor*). In *Taylor*, the court concluded that the trial court abused its discretion in granting a motion for new trial because it disregarded the jury's verdict and instead decided "what result it would have reached if the case had been tried without a jury." (*Id.* at p. 848.) It based this conclusion on the facts that the defendant's motion failed to set out any proper ground for granting it, that the verdict was supported by substantial evidence, and that the trial court failed to articulate any basis which would support a conclusion that the verdict was not supported by sufficient credible evidence. (*Id.* at pp. 848–849.) We respectfully disagree with *Taylor's* reasoning, and are therefore not persuaded by the district attorney's arguments.[4]

First, the idea that the existence of substantial evidence which supports the jury's verdict renders the trial court's contrary determination an

[4] At oral argument, the district attorney informed us that the recent case *People v. Noel* (2005) 128 Cal.App.4th 1391 [28 Cal.Rptr.3d 369] (petn. for review filed June 7, 2005, S134543) (*Noel*) had applied the reasoning of *Taylor*, *supra*, 19 Cal.App.4th 836.

Although the *Noel* court cited *Taylor*, it did not really apply the same reasoning. In *Taylor*, the trial court gave no explanation for its decision, and the Court of Appeal did not examine the record to determine whether a rational trier of fact could have found the evidence insufficient. (*Taylor*, *supra*, 19 Cal.App.4th at pp. 848–849, 852–853.) In *Noel*, the trial judge stated that he disbelieved all of the defendant's lengthy testimony with the exception of a single statement—that she had had no idea that her dogs were capable of mauling a person to death. On the basis of that single statement, the trial court found the evidence insufficient to support a finding of implied malice. (*Noel*, *supra*, 128 Cal.App.4th at pp. 1460–1461, 1463.) Citing *Taylor*, the Court of Appeal held that it was an abuse of discretion to find that single statement credible and dispositive on the issue of implied malice without offering any explanation as to how this one statement outweighed all the other evidence that the trial judge and the jury had found credible. (*Id.* at pp. 1449–1450, 1463.) But the Court of Appeal also examined the entire record and noted that the evidence overwhelmingly supported the conclusion that the defendant had the requisite knowledge of her dog's dangerous propensities (*id.* at pp. 1449–1457), and that the trial judge had expressly found that there was no question that the defendant knew that the dogs were going to hurt someone someday, and that she knew that the dogs were wild, uncontrollable and dangerous and were likely to do something bad (*Id.* at p. 1456.) Moreover, in finding the evidence insufficient to support the finding of implied malice, the trial judge applied an incorrect legal standard—that it was not sufficient that the defendant knew the dogs were inherently dangerous to other people, but that to be guilty of implied malice second degree murder, she had to know that they were likely to kill someone. (*Id.* at pp. 1444–1449.)

Thus, although in reviewing the trial court's exercise of discretion as a "thirteenth juror" the Court of Appeal focused on the absence of a satisfactory explanation for the court's ruling, in reality it found that the trial court's decision was both contrary to law and not supported by substantial evidence. It did not, however, find that no reasonable judge could have found the evidence insufficient. On the contrary, it remanded the case to the trial court for reconsideration of the new trial motion "in light of the appropriate standard for implied malice and in light of [the trial court's] proper role as the thirteenth juror." (*Noel*, *supra*, 128 Cal.App.4th at p. 1457.)

abuse of discretion or a usurpation of the jury's function contravenes the established law discussed above: It is the trial court's function to determine independently whether it is satisfied that there is sufficient credible evidence to sustain the verdict. If the record contains any substantial evidence which supports a judgment contrary to that of the jury, the trial court's ruling must be upheld, *even if there is also legally sufficient evidence to support the jury's verdict*. (*Robarge, supra,* 41 Cal.2d at pp. 633–634; *People v. Knutte, supra,* 111 Cal. at pp. 455–456; *People v. Tagawa* (1939) 35 Cal.App.2d 14, 17 [94 P.2d 354].)

▇ Second, because the appellate court's function is to determine whether the trial court's ruling is supported by substantial evidence, it is irrelevant that the trial court failed to articulate its reasons for concluding that the evidence was insufficient to support the verdict. Rather, we look to the record to make that determination. (*People v. Johnston, supra,* 113 Cal.App.4th at pp. 1303–1304; *People v. Drake, supra,* 6 Cal.App.4th at p. 97 [appellate court will uphold trial court's factual findings, whether express or implied]; see also *Taylor, supra,* 19 Cal.App.4th at pp. 852–853 (dis. opn. of Johnson, J.).)

▇ We have no doubt that it is the better practice for a trial judge to articulate his or her reasons for finding evidence insufficient to support a verdict arrived at by the jury. The jurors, the attorneys and the public all have a right to know why a judge has decided to overrule the jury, and a statement of reasons facilitates appellate review of the decision for abuse of discretion. However, it is well established that on appeal, we review the correctness of the court's ruling, not its reasoning. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704].) Because we are obligated to review the record independently to determine whether the ruling is supported by substantial evidence (*Robarge, supra,* 41 Cal.2d at pp. 633–634), the court's statement of its reasons, while perhaps helpful in focusing our review, is not dispositive.

Applying these principles to the case before us, we find no abuse of discretion.

▇ The trial judge stated that she had "difficulty finding an intent to kill based on this evidence." The specific intent to kill the alleged victim is an essential element of premeditated attempted murder. (*People v. Bland* (2002) 28 Cal.4th 313, 327–328 [121 Cal.Rptr.2d 546, 48 P.3d 1107].) We find nothing in the evidence which compels the conclusion that defendant intended to kill Gibbs.

The two percipient witnesses gave conflicting and contradictory statements as to what happened. It was within the judge's discretion to determine which of the statements, if any, she found credible. (*People v. Sheran, supra,* 49 Cal.2d at p. 109.)

The judge could reasonably have concluded that Hamilton's first description of the incident, given at the hospital very shortly after the shooting, was accurate. In that statement, Hamilton described arguing with defendant and engaging in shoving back and forth. She said that Gibbs came up behind her while she and defendant were arguing. Gibbs told defendant not to push her and pushed defendant, reaching over Hamilton's shoulder. Almost immediately, Hamilton heard the shot. She never saw the gun. Gibbs was behind her and she was "real close up on" defendant.

Gibbs's first rendition of the events was substantially similar to Hamilton's. In his tape-recorded statement, he told police that he tried to break up the fight between defendant and Hamilton. Defendant pulled out a gun and Hamilton stepped between them. The gun discharged and Hamilton was shot in the chest. However, Gibbs also said he never saw a gun, but just assumed when he heard the sound that it was a gun.

Nothing in Hamilton's or Gibbs's description of the incident compels the conclusion that defendant intended to kill Gibbs. Rather, it equally supports the conclusion that the gun discharged accidentally when Gibbs shoved defendant. The physical evidence supports this conclusion as well. The single gunshot entered the midchest side of Hamilton's right breast and exited through the base of the breast below her right armpit. Because Hamilton said she was standing facing defendant with Gibbs standing behind her, a rational trier of fact could conclude that if defendant had been aiming at Gibbs when he fired the shot, the bullet would have gone through Hamilton's body front-to-back, not side-to-side. This conclusion is further supported by the fact that the bullet was lodged in the wall of the bedroom. Hamilton and Gibbs were standing in the doorway of the bedroom. If defendant had been aiming at Gibbs, it would be reasonable to expect the bullet to have lodged in the wall behind him.

Finally, there was no evidence of any serious discord between the two men, no evidence that defendant had any reason to want to kill Gibbs, and no evidence that he ever threatened to do so.

Thus, we cannot say as a matter of law that there is no substantial evidence to support the trial court's conclusion that the evidence was insufficient to prove beyond a reasonable doubt that defendant fired the shot with the intent to kill Gibbs. We therefore find no abuse of discretion in the decision to grant the motion for new trial.

## DISPOSITION

The order granting defendant a new trial on the charge of willful, deliberate premeditated attempted murder is affirmed.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

Appellant's petition reviewed by the Supreme Court was denied October 12, 2005.