Filed 6/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDDIE ROY CARTER,<br><br>    Defendant and Appellant. | 2d Crim. No. B251727<br>(Super. Ct. No. 2012006121)<br>(Ventura County) |

When faced with making a difficult ruling or decision, some trial court judges, like anyone else, voice aloud the conflicting arguments in favor of one choice over the other. A judge's remarks may suggest one result, yet the judge arrives at the opposite result. In such circumstances, the appellate court does not use the judge's remarks to impeach the ruling. (*People v. Borchers* (1958) 50 Cal.2d 321, 329-330.)

But when a judge's remarks preceding a ruling reflect a misapprehension of the law upon which that ruling is based, the appellate court must consider the judge's remarks in its review. That is what we do here.

Eddie Roy Carter appeals a judgment following conviction of second degree commercial burglary, with a finding of a prior serious felony strike conviction. (Pen. Code, §§ 459, 667, subd. (b)-(i), 1170.12, subds. (a)-(d).)[1] We vacate the trial court's order denying a new trial, and order the court to grant a new trial.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

*FACTS AND PROCEDURAL HISTORY*

In the morning of May 20, 2010, Christopher Cruz, manager of the Wells Fargo Bank located on North Moorpark Road in Thousand Oaks, arrived at the bank and discovered that the door locks had been removed and replaced. Metallic shavings and debris lay on the ground nearby. Cruz telephoned the bank security officer and the Ventura County Sheriff's Office. Upon entering the bank, Cruz saw that the automatic teller machine was vandalized and a "big chunk of it . . . [was] cut out." Wires in the ceiling also had been cut and disconnected.

During 2010, Norton Construction Company had performed renovations at branch banks that Wells Fargo Bank acquired from Wachovia Bank. In the evening of May 20, 2010, "Chris" had telephoned the bank security officer requesting deactivation of the alarm system in the North Moorpark Road branch bank in order to perform construction.

Charles Duncan, security officer for Wells Fargo Bank in Ventura County, investigated the break-in and recovered surveillance video recordings from May 19 and 20, 2010. The recordings revealed a blue Nissan pickup truck parked in front of the bank, and a man wearing a curly gray wig, black sunglasses, a bulky jacket, and jeans, leave the truck, tamper with the door locks, and enter the bank. The surveillance camera images resembled Carter. A vehicle registration check of the truck disclosed that it was registered to Carter's father, Robert Carter.

When the bank locksmith later opened the damaged automated teller machine, he found a screwdriver inside. A forensic scientist compared the DNA found on the screwdriver handle with a DNA sample obtained from Carter. The two samples of DNA "match[ed] exactly." The odds that the DNA found on the screwdriver is that of another Caucasian person are one in 1.3 quintillion.

Robert Carter testified that the Nissan truck belonged to him, but that his son used it in his flooring construction business. He stated that his son employed 8 to 10 employees who had access to the truck and the tools stored therein.

2

Tracey Carter, now married to defendant, testified that she drove him to her Newport Coast home the evening of May 19 and 20, 2010, where he spent the night. On the evening of May 20, 2010, they celebrated Tracey's 40th birthday in the company of their friends.

The jury convicted Carter of second degree commercial burglary. (§ 459.) In a separate proceeding, the trial court found that he suffered a prior serious felony strike conviction and served a prior prison term. (§§ 667, subd. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).) Upon the prosecutor's motion, the court struck a second prior prison term allegation.

On August 30, 2013, the trial court held a sentencing hearing. During the proceedings, the trial judge stated that he would have acquitted Carter had he received a court trial because, "I just don't think the person who [committed the crime] is Mr. Carter." The judge further explained that he found the alibi evidence credible and that "a whole raft of other people . . . had access to [Carter's] truck, [and] his tools [and] access to the information [regarding the bank's security alarm]." The judge stated that his misgivings presented a sentencing dilemma because "I'm not sure the defendant is the right man," and "what's the correct sentence given my misgivings about whether you have the right man?" The judge then invited Carter to research whether the court could order a judgment notwithstanding the verdict in a criminal prosecution, commenting that he had "qualms . . . whether I ought to be imposing any sentence at all." The judge then continued sentencing until September 9, 2013.

*New Trial Motion*

Prior to the continued sentencing hearing, Carter filed a motion for a new trial, asserting that the jury verdict rested upon insufficient evidence. (§ 1181, subd. 6 [trial court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence"].) At the continued sentencing hearing held on September 9, 2013, the trial court heard argument regarding the new trial motion. Following argument, the trial judge denied the motion, stating: "It was a trial by jury, and there was sufficient evidence presented if the jurors believed it to convict Mr. Carter of this crime . . . . I would have

3

weighed the evidence differently . . . , but there was certainly sufficient, in fact more than sufficient, evidence for the jurors to reach the decision they did . . . . They just saw the case differently than the Court . . . ." The judge then requested argument regarding the sentence to impose on a defendant whom he did not believe was guilty due to the credible alibi evidence: "I'm sentencing a person where if I had been trying the case . . . I would have had a reasonable doubt . . . whether he was guilty, but that's only because I weighed the alibi evidence differently than the jurors . . . ."

Following additional argument, the trial court dismissed the second prior prison term allegation "to try to achieve a lowest sentence possible because the Court does have some doubt as to whether in fact the defendant is the guilty party in this case." The court imposed a 32-month prison term (the 16-month low term, doubled) pursuant to section 667, subdivision (e)(1) and stated: "[T]he Court having residual doubt . . . whether [defendant] in fact committed this crime . . . causes me to impose the mitigated term." The court also imposed a $280 restitution fine, a $280 parole revocation restitution fine (stayed), a $40 court security assessment, a $40 crime prevention program fine, and a $30 criminal conviction assessment, ordered $29,720 restitution to Wells Fargo Bank, and awarded Carter one day of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a), 1202.5; Gov. Code, § 70373.)

Carter appeals and contends that the trial court erred by: 1) denying his motion for a new trial, and 2) permitting the prosecutor to impeach two defense witnesses with their prior misdemeanor convictions for theft and burglary.

DISCUSSION

I.

Carter argues that the trial court abused its discretion by denying his new trial motion based upon the erroneous belief that it is bound by the jury's credibility determination of the alibi witness. (*People v. Dickens* (2005) 130 Cal.App.4th 1245,

4

1251-1252 [in determination of new trial motion, trial court is not bound by jury determinations of witness credibility or the weight and effect of the evidence].)[2]

In determining a new trial motion, the trial court accords no evidentiary deference to the verdict. (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.) "Instead, it independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge*, who sits, in effect, as a '13th juror.'" (*Ibid.*) Thus, the court considers "the proper weight to be accorded to the evidence" and then determines whether "sufficient credible evidence" supports the verdict. (*People v. Robarge* (1953) 41 Cal.2d 628, 633 ["It has been stated that a defendant is entitled to two decisions on the evidence, one by the jury and the other by the court on motion for a new trial"].) If the court is not convinced that the charges have been proved beyond a reasonable doubt, it may rule that the jury's verdict is "'contrary to [the] . . . evidence'" within the meaning of section 1181, subdivision 6. (*Porter*, at p. 133.) In doing so, the judge acts as a 13th juror who is a "holdout" for acquittal. (*Ibid.*) Thus, the grant of a new trial is "the equivalent of a mistrial caused by a hung jury." (*Ibid.*)

In its independent assessment of the evidence, the trial court is guided by a presumption in favor of the correctness of the verdict and the proceedings in its support. (*People v. Fuiava* (2012) 53 Cal.4th 622, 729 [trial court should not disregard the verdict but instead consider the proper weight to be accorded to the evidence and then decide whether the verdict is supported by sufficient credible evidence].) The presumption that the verdict is correct, however, does not affect the court's duty to apply its independent determination to the probative value of the evidence. (*People v. Dickens*, *supra*, 130 Cal.App.4th 1245, 1252.)

---

[2] We reject the Attorney General's argument that Carter has forfeited his argument by not objecting to the trial court's decision. Carter properly filed a new trial motion and argued the correct legal standard to determine the motion. For appellate purposes, he preserved his claim.

The court has broad discretion in ruling on a new trial motion, and the court's ruling will not be overturned absent a clear and unmistakable abuse of that discretion. (*People v. Fuiava*, *supra*, 53 Cal.4th 622, 730.) The court abuses its discretion, however, where it misconceives its duty, applies an incorrect legal standard, or fails to independently consider the weight of the evidence. (*People v. Robarge*, *supra*, 41 Cal.2d 628, 634 [trial court erroneously deferred to jury's determination of credibility].)

Under the circumstances here, the trial court misunderstood its duty and the correct legal standard in ruling on the new trial motion. The trial judge repeatedly stated that he found Tracey Carter's alibi evidence credible, other persons had access to the truck and the tools within, Carter was not "the right man." He also accorded more weight to Tracey Carter's alibi testimony than did the jury, and he held a reasonable doubt regarding Carter's guilt. The court also invited Carter to research the applicability of a judgment notwithstanding the verdict in a criminal prosecution. By contrast, the judge's statements here were much more than the isolated statement made and relied on in *People v. Borchers*, *supra*, 50 Cal.2d 321, 329-330, in an argument to impeach the court's ruling on a new trial motion.

Moreover, the prosecution bears the burden of establishing that the defendant was present and committed the crime charged. (CALCRIM No. 3400 ["Alibi"].) The defendant is not required to prove that he was elsewhere at the time of the crime. (*Ibid.*) The trial judge's statements reflect his belief that the prosecution did not bear its burden of proving that Carter was present and committed the burglary of Wells Fargo Bank.

At oral argument the prosecutor said, "If there's enough evidence for a case to survive an attack on appeal, there should be enough evidence to survive a motion for a new trial." The standards for the trial court's determination of a new trial motion and appellate review of a judgment are quite different. (*Porter v. Superior Court, supra,* 47 Cal.4th 125, 132-133.)

Based upon the trial judge's review of the weight of the evidence and witness credibility, Carter was entitled to a new trial. (*People v. Borchers*, *supra*, 50

6

Cal.2d 321, 330 ["[U]nhesitant exercise of [granting a new trial] by the trial judge, when he is satisfied that the action is indicated by the evidence, not only makes for justice in the individual case but tends also to lighten the burden of reviewing courts and to expedite the finality of judgments"].)  Given the judge's repeated statements that he had a reasonable doubt whether Carter committed the crime and that Carter was not "the right man" in view of the alibi evidence, it serves no purpose to remand the matter for another new trial hearing.

## II.

Carter contends that the trial court erred by permitting the prosecutor to impeach two defense witnesses, employees of his construction business, with their 2002 misdemeanor theft and burglary convictions.  He concedes that the crimes of theft and burglary involve moral turpitude and are admissible for impeachment purposes.  (*People v. Cudjo* (1993) 6 Cal.4th 585, 626 [theft]; *People v. Collins* (1986) 42 Cal.3d 378, 395 [burglary].)  Carter points out that the two witnesses, Robert Bengochea and Michael Starbuck, were 19 or 20 years old at the time they committed the prior offenses, and that Starbuck denied suffering the 2002 conviction.

For purposes of retrial, we discuss this contention.

In a hearing outside the jury's presence, the prosecutor inquired regarding impeachment of defense witnesses Bengochea and Starbuck with theft and burglary convictions they suffered in 2002.  Carter objected, and asserted that evidence of the convictions was more prejudicial than probative, given that the convictions occurred 11 years prior.  Following argument, the trial court determined that evidence of the convictions was more probative than prejudicial, within the meaning of Evidence Code 352.  Subsequently, the prosecutor questioned Bengochea and Starbuck regarding their prior convictions.

A witness may be impeached with prior conduct that involves moral turpitude, whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion pursuant to Evidence Code section 352.  (*People v. Clark* (2011) 52 Cal.4th 856, 931.)  "Past criminal conduct involving moral turpitude . . . has some logical

bearing on the veracity of a witness in a criminal proceeding . . . ." (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

The trial court has broad discretion in determining the admissibility of impeachment evidence. (*People v. Clark*, *supra*, 52 Cal.4th 856, 932.) When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, and in the case of a defendant, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have upon his decision to testify. (*Id.* at p. 931.)

The trial court's decision to permit evidence of the 11-year-old convictions was not unreasonable and within its discretion. Moreover, the witnesses explained that they were young men in 2002 and one witness explained that his brother, not he, suffered the conviction. The weight of the impeachment evidence was a matter for the jury in light of the witnesses' explanations.

We vacate the order denying a new trial and order the trial court to grant Carter a new trial.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:



YEGAN, J.



PERREN, J.

8

James P. Cloninger, Judge

Superior Court County of Ventura

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Timothy M. Weiner, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.