Filed 1/27/22  P. v. Roots CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JONTELL JAYMAR ROOTS,<br><br>Defendant and Appellant. | C092570<br><br>(Super. Ct. No. STK-CR-FE-2019-0005151) |

A jury found defendant Jontell Jaymar Roots guilty of second degree murder (Pen. Code, § 187, subd. (a))[1] with two firearm enhancements (§§ 12022.5, subd. (a), 12022.53, subd. (d)), and the trial court sentenced him to 40 years to life in prison. Defendant moved for a new trial on the ground that the evidence was insufficient to support the verdict.  The motion was denied.  On appeal, defendant contends that the trial

---

[1]     Undesignated statutory references are to the Penal Code.

1

court abused its discretion by failing to independently evaluate and weigh the evidence before denying the motion. We agree. We accordingly reverse and remand with instructions that the trial court rehear the motion for new trial.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The facts*

One evening in September 2017, R.A. greeted an acquaintance, Lonnel Broadnax, outside a market. Around that time, R.A. saw a white SUV pull up and park nearby. Defendant and another person exited the SUV. R.A. saw defendant and Broadnax speak to each other for a couple of minutes, and noticed they both appeared to dislike what the other was saying. At 8:02 p.m., Broadnax punched defendant then ran away. A security camera showed Broadnax running in one direction and then, seconds later, a person in a gray hoodie walking in the same direction. A different security camera showed Broadnax several seconds later with a figure following behind. Sergeant Joseph Bitondo of the Stockton Police Department said that neither person following Broadnax was defendant. R.A. saw defendant and the driver get back into the SUV and "chase" Broadnax.

Approximately four to five minutes after Broadnax punched defendant and Broadnax fled, R.A. heard 10 to 15 rapid pops that sounded like gunshots. Around that same time, D.C., a retired California Highway Patrol officer, and his wife's cousin, J.F., heard multiple gunshots fired as they watched television in J.F.'s nearby home. They looked out the window. J.F. saw the silhouette of a man holding a gun over a fence and firing into the parking lot of a nearby apartment building. D.C. saw a man shoot a series of bullets from the street or sidewalk towards a parking lot. The man then jumped over a fence and fired more rounds over the top of the fence, aiming at something on the ground in the parking lot. The man jumped off of the fence and ran away. The man returned and jumped back over the fence. D.C observed him run towards a white compact car that was waiting on the street, though he did not see whether the man got into the car. The car drove away.

2

J.F. and D.C. went outside. A compact, white four-door car with at least three males inside pulled up to them. D.C. was unsure if it was the same car he saw waiting for the shooter. The men in the car said something like, "Hey, did you see my cousin? He was out here." J.F. responded that someone "took off down the street," and the men said, "That's right, you didn't see anybody, you didn't see anything," and drove away. A neighborhood video camera showed a white SUV park across from the market at 7:52 p.m. and leave the area at approximately 8:12 p.m. that evening.

Police officers responded to reports of a shooting and found Broadnax's body in the apartment parking lot. An autopsy revealed that Broadnax was shot with 32 bullets and died as a result. The recovered bullet casings were nine-millimeter casings marked by "Glock-type firing pins."

Approximately an hour and a half after the shooting, a message was posted on defendant's social media account stating, "G26 wit 30 850." Detective Kevin Knall of the Stockton Police Department believed "G26" referred to a Glock 26, which is a nine-millimeter handgun, that "wit 30" referred to a high capacity extended magazine, and that "850" referred to the price for the firearm.

Around that same time, defendant's social media account sent a message to J.S.'s account asking, "Wya" (an acronym for "where you at"). A video from the market showed that J.S. was at the market when Broadnax hit defendant, and that J.S. had spoken to Broadnax there. J.S.'s account responded with a phone call or video chat. The following afternoon, defendant's account called J.S.'s account twice and said, "Don't trip its all good," to which J.S.'s account replied, "I am wit his family bro give me a min."

Seven days before the shooting, defendant posted a video of himself on Snapchat holding a Glock handgun with an extended, high capacity magazine. Six days before the shooting, defendant posted a video of himself on Snapchat pointing a firearm with an extended magazine at the camera. In the video, he referred to a 30-round high capacity magazine.

3

The police interviewed defendant on November 7, 2017. While defendant said he typically drove a white Ford Expedition SUV, he also said he did not recall ever seeing Broadnax and did not know who he was.

B.    *Procedural history*

Following trial, a jury found defendant guilty of second degree murder and also found true that defendant personally used a firearm in the commission of a felony and personally discharged a firearm, causing great bodily injury or death. Defendant moved for a new trial, arguing insufficient evidence supported the jury's verdict, and that the evidence was either exonerating or only sufficient to support a conviction for voluntary manslaughter.

The parties argued the motion at a hearing. Defendant repeatedly asserted that the jury made a "mistake" by finding defendant guilty of murder because the verdict was not supported by substantial evidence.

The trial court denied the motion as follows:

"I've read the motion. I've read it twice. I've done some research on the law. Certainly as [defense counsel] says, you know, we have all been a part of numerous trials. This particular trial I think I can say was a difficult case for the People. I can't say that the verdict shocked me. I can't say it completely surprised me, but certainly, you know, I could have seen the jury doing a lot of different things in this case. And frankly, I've had a number of trials where sometimes the evidence may seem one way and the jury looks at the evidence differently.

"This particular motion is brought pursuant to 1181(6) of the Penal Code. And [defense counsel is] arguing that the jury's verdict was erroneous and it was not based on the facts or the law, and that there had been no identification. And that based on that and also based on the Court's prior rulings in the case that a new trial motion should be granted.

4

"A defendant may be granted a new trial if the court has either misdirected the jury on a matter of law or that the jury—or that the court made an erroneous legal ruling. Virtually any legal ruling made during the course of a trial may support the grant of a new trial motion. The only limitation, the ruling must have affected a substantial right of the defendant . . . . So that's one basis that the defense is bringing the new trial motion.

"The other basis is insufficiency of the evidence. Where the verdict or finding is contrary to the evidence in the case. It does require the trial judge to independently review the evidence, People [v.] Davis, 10 Cal 4th[ ] 463. Although the trial judge should not ignore the verdict, People [v.] Lopez, 1 Cal App 3d[ ] 78. And the court is to be guided by the presumption in favor of the correctness of the jury's verdict. This means that only that the judge may not arbitrarily reject a verdict that is supported by substantial evidence, People [v.] Dickens, 130 Cal App 4th[ ] 1245.

"So pursuant to Lopez, 1 Cal App 3d[ ] 78, the Court is guided by a presumption that the jury's verdict is correct.

"The Court does have broad discretion in determining whether the evidence was sufficient. And it had sufficient probative value to sustain the verdict. That's the [People v.] Robarge [(1953) 41 Cal.2d 628] case. [¶] . . . [¶]

"Certainly the jury heard—listened to all of the evidence. If—to be believed what the defense is indicating, all 12 of those jurors would have had to make the same mistake. All 12 jurors were instructed that they were to reach an independent verdict. To hold the People to their burden of proving each and every element beyond a reasonable doubt.

"Certainly I don't think it's farfetched what [defense counsel] is saying that juries can make mistakes, but we have to consider that all 12 jurors in this particular case made a mistake.

"Specifically [the prosecutor] argued this, and it's something that I had considered previously also. That the jury was—they were instructed on circumstantial evidence and sufficiency of that evidence. And specifically they were told if you can draw two or

5

more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. And I believe that was even argued by [defense counsel]. Certainly they were given both [CALCRIM Nos.] 224 and 225. [CALCRIM No.] 225 is the same instruction but more tailored to Specific Intent: Mental State.

"But certainly this—while there was some direct evidence in the case, largely as far as the identification this was a circumstantial evidence case, and the jurors were instructed of that and that's something that they were told they had to consider. And if the circumstantial evidence in the case pointed to innocence and another to guilt, if it was equal, they had to find innocence and find not guilty. So the jury was properly instructed.

"The Court is to assume by law that the jury followed the instructions. I don't have any information indicating that the jury did not follow the Court's instructions. They heard the case. And they came back guilty of second degree murder and use of a firearm.

"So at this point, based on the case law that I've reviewed and the evidence in the case, the Court is going to deny the motion for new trial."

After the trial court denied the motion, it sentenced defendant to an aggregate term of 40 years to life, comprised of 15 years to life for second degree murder plus 25 years to life for personally discharging a firearm, causing great bodily injury or death. The trial court struck the remaining firearm enhancement.

## DISCUSSION

Defendant argues that the trial court abused its discretion and violated his due process rights by applying an incorrect standard when evaluating his motion for new trial. He contends that rather than independently review the sufficiency of the evidence, as required on a motion for new trial, the trial court erroneously deferred to the jury's verdict, concluding it would not disturb the verdict because the jury was correctly instructed. We agree with defendant.

6

A.      *Applicable legal principles*

Section 1181, subdivision 6 provides that the trial court may grant a new trial when it finds that "the verdict or finding is contrary to law or evidence." (§ 1181, subd. 6.) "[T]he court extends no evidentiary deference in ruling on an 1181(6) motion for new trial. Instead, it independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge . . . .*" (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133, original italics.) Thus, "[w]hen a trial court rules on a motion for new trial based upon inadequacy of the evidence, it is vested with a plenary power—and burdened with a correlative duty—to independently evaluate the evidence." (*Ryan v. Crown Castle NG Networks, Inc.* (2016) 6 Cal.App.5th 775, 784.)

When independently weighing the evidence, the trial court is "guided by a presumption in favor of the correctness of the verdict and proceedings supporting it. [Citation.] The trial court 'should [not] disregard the verdict . . . but instead . . . should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.' " (*People v. Davis* (1995) 10 Cal.4th 463, 523-524, quoting *People v. Robarge* (1953) 41 Cal.2d 628, 633 (*Robarge*).) "The trial court is not bound by the jury's determinations as to the credibility of witnesses or as to the weight or effect to be accorded to the evidence. [Citations.]" (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1251-1252.) "If the court is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the jury's verdict is 'contrary to [the] . . . evidence.' [Citations.] In doing so, the judge acts as a 13th juror who is a "holdout" for acquittal. Thus, the grant of a section 1181(6) motion is the equivalent of a mistrial caused by a hung jury. [Citation.]" (*Porter v. Superior Court, supra*, 47 Cal.4th at p. 133.)

A trial court is presumed to have known and followed the applicable law. (*People v. Castaneda* (1975) 52 Cal.App.3d 334, 342.) "But when a judge's remarks preceding a

7

ruling reflect a misapprehension of the law upon which that ruling is based, the appellate court must consider the judge's remarks in its review." (*People v. Carter* (2014) 227 Cal.App.4th 322, 324.) We review the trial court's denial of a motion for new trial for abuse of discretion. (*People v. Williams* (1988) 45 Cal.3d 1268, 1318.)

B. *Analysis*

We conclude the trial court abused its discretion here by failing to conduct an independent review of the evidence. "The court abuses its discretion . . . where it misconceives its duty, applies an incorrect legal standard, or fails to independently consider the weight of the evidence." (*People v. Carter, supra*, 227 Cal.App.4th at p. 328, citing *Robarge, supra*, 41 Cal.2d at p. 634.)

Here, although the trial court initially acknowledged its duty to independently review the evidence, it did not fulfill this duty. In fact, the trial court's only reference to its view of the evidence suggests that it might have seen the evidence *differently* than the jury. The trial court initially stated that "[t]his particular trial . . . was a difficult case for the People. I can't say that the verdict shocked me. I can't say it completely surprised me, but certainly, you know, I could have seen the jury doing a lot of different things in this case." It also observed that it "had a number of trials where sometimes the evidence may seem one way and the jury looks at the evidence differently." But the trial court did not explain whether its *own* evaluation of the evidence could be reconciled with the jury's verdict, or whether it believed, after separately reviewing the evidence, that the evidence was sufficient to sustain the verdict. Indeed, the trial court neither articulated, nor gave any weight to, its own view of the evidence at all.

Instead, the trial court appears to deny the motion based solely on the *jury's* view of the evidence. While the trial court's analysis must be guided by the presumption that the verdict is correct, this does not negate the court's primary obligation to independently review the evidence. Here, rather than discharge this duty, the trial court confirmed that the jury received proper instructions on circumstantial evidence and presumed the jury

8

followed its instructions. Satisfied that the jury was adequately instructed, the trial court then simply deferred to the jury's findings to deny the motion, explaining, "They heard the case. And they came back guilty of second degree murder and use of a firearm. [¶] So at this point, based on the case law that I've reviewed and the evidence in the case, the Court is going to deny the motion for new trial."

The People argue that this final statement by the trial court shows that it independently assessed the evidence. But this statement follows the trial court's discussion of *the jury's* evidentiary findings, and makes no reference to its own. Without more, and in view of the trial court's ruling as a whole—which relied exclusively on the jury's findings—the trial court's oblique reference to "the evidence in the case" does not suggest that the court separately undertook its own evidentiary review.

As the trial court failed to conduct its own review of the evidence, and instead denied the motion based on the presumption that the jury properly followed its instructions, the trial court abused its discretion. We remand the matter to the trial court for a new hearing on the motion for a new trial consistent with the legal standards set forth in this opinion. (See *Robarge, supra*, 41 Cal.2d at p. 635; *People v. Watts* (2018) 22 Cal.App.5th 102, 119-120.) In doing so, we reject defendant's contention that we must simply grant the motion for new trial based on the trial court's comments that it viewed the evidence differently than the jury. On this record, we cannot presume how the trial court would have analyzed the evidence had it applied the correct standard.

## DISPOSITION

The judgment and order denying the motion for new trial are vacated. This matter is remanded to the trial court with directions that the trial court hear and determine the

motion for new trial consistent with this opinion.  The judgment is in all other respects affirmed.

      KRAUSE      , J.

We concur:

     HULL     , Acting P. J.

     HOCH     , J.