Filed 6/23/22  P. v. Minch CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROBERT MINCH, <br><br> Defendant and Appellant. | F082615 <br><br> (Super. Ct. No. BF165836A) <br><br><br> **OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Tiffany Organ-Bowles, Judge.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P. J., Franson, J. and Peña, J.

In a prior opinion (*People v. Minch* (June 26, 2020, F076882) [nonpub. opn.] (F076882)), this court conditionally reversed a judgment of conviction against Robert Minch (defendant) based on his eligibility to seek retroactive relief under Penal Code section 1001.36 (all further statutory references are to the Penal Code). Section 1001.36 authorizes discretionary "pretrial diversion" in certain cases involving mentally disordered offenders. Defendant now challenges the trial court's reinstatement of the judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2016, defendant entered a store and moved toward one of the cash registers. Based on defendant's gait and odd "mumbling," it appeared to the cashier that he was drunk. Defendant reached over the counter and began pressing buttons on the cash register. After failing to open the till, defendant pulled out a knife and began "swinging it slowly." Next, he picked up some merchandise and exited the store. A supervisory employee followed him outside and called 911 to report the incident.

Sheriff's deputies confronted defendant outside of the store. Defendant extended his arm and pointed the blade of his knife at them. He ignored repeated commands to drop the knife, resulting in a standoff lasting several minutes. Defendant paced back and forth, occasionally pausing to drink from a "liquor bottle," and taunted the deputies with profane language and gestures.

Defendant alternated between pointing his knife at the deputies and running its blade across his wrists and neck. When the deputies drew their firearms, defendant told them to kill him. One of the deputies eventually snuck up behind defendant and incapacitated him with a Taser.

Based on his interactions with the store supervisor, defendant was charged with second degree robbery (§§ 211, 212.5; count 1). He was also charged with attempted robbery based on his interactions with the cashier (count 2). In count 3, defendant was charged with drawing or exhibiting a deadly weapon with the intent to resist or prevent

2.

an arrest or detention (§ 417.8). For enhancement purposes, counts 1 and 2 alleged personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)). Defendant was further alleged to have suffered a prior strike and a prior serious felony conviction (§§ 667, subds. (a)(1), (b)–(i), 1170.12)).

In December 2016, defendant was declared incompetent to stand trial. In May 2017, his competence was found to have been restored. A jury trial was conducted in October 2017.

Defendant was acquitted of robbery but found guilty of petty theft (§ 488) as a lesser included offense. He was convicted as charged on counts 2 and 3, but the weapon enhancement allegation was not sustained. The prior strike and prior serious felony conviction allegations were found true in a bifurcated proceeding.

In December 2017, the trial court ordered a diagnostic evaluation of defendant's mental health pursuant to section 1203.03. In January 2018, the trial court sentenced defendant to an aggregate prison term of 14 years 4 months. The sentence was calculated using the upper term of four years for count 3, which was doubled because of the prior strike, plus 16 months on count 2 and five years for the prior serious felony conviction. A concurrent sentence was imposed for the petty theft conviction. Defendant filed an appeal.

Section 1001.36 was enacted approximately six months after the trial court's imposition of judgment. The statute authorizes, in lieu of criminal prosecution, a pretrial diversion procedure involving the placement of defendants into mental health treatment programs. While defendant's appeal in F076882 was pending, the California Supreme Court held section 1001.36 applies retroactively to cases in which the judgment was not final when the law took effect. (*People v. Frahs* (2020) 9 Cal.5th 618, 637.) Accordingly, this court conditionally reversed defendant's judgment and remanded the cause for a determination of his eligibility and suitability for relief under section 1001.36. The trial court was also instructed to consider exercising its discretion to strike or dismiss

3.

the prior serious felony conviction enhancement in light of Senate Bill No. 1393 (2017–2018 Reg. Sess.). Defendant's claims of insufficient evidence and instructional error were rejected.

The remittitur in F076882 was issued on September 20, 2020. On December 1, 2020, the trial court ordered defendant "be made available for examination by the Director or Associate of the Kern Behavioral Health and Recovery Services Department for the purpose of an evaluation and recommendation regarding qualification for diversion." The record contains no other documents related to this order except for a responsive letter from the agency dated April 2, 2021. The letter states:

> "Robert Minch participated in a mental health assessment on 1/15/21 while incarcerated at Lerdo County Jail …. It was determined that he does not meet criteria for the Adult Transition Team (life impairments due to a mental health symptom must be severe). Per his assessment his mental health symptoms are moderate. He can pursue mental health treatment through a community agency such as Omni or Clinica Sierra Vista."

On March 17, 2021, defense counsel filed a written motion for relief under section 1001.36. In a supporting declaration, counsel attested defendant "has been diagnosed by several court appointed doctors whose reports are in this Court's file with …: autism spectrum disorder; unspecified attention deficit/hyperactivity disorder; major depressive disorder, recurrent episode, severe; amphetamine-type substance use disorder, moderate; epilepsy; Klinefelter syndrome; chronic obstructive pulmonary disease; and anemia." Counsel separately alleged and argued that defendant "was clearly in the midst of a psychotic episode" when he committed the underlying offenses.

Defendant's motion was further supported by the written report of a staff psychologist at North Kern State Prison. The report, dated December 21, 2017, was based on the psychological evaluation ordered by the trial court prior to the original sentencing hearing. In relevant part, the report indicates the evaluator's diagnostic impression of "Delusional Disorder" of an unspecified type; "Generalized Anxiety"; and

4.

"Adjudgment Disorder, Unspecified." The author noted defendant "denied [any] history of paranoid delusions and did not present with bizarre or unusual thought processes, and displayed no signs of formal thought disorder … [but he] did present with delusions believing in conspiracy with the Kern County Sheriff's Office due to his belief that they are after him." In concluding remarks, the psychologist opined defendant "would benefit from extensive mental health treatment in an inpatient facility to address the mental health symptoms that may have been a mitigating factor into his current offense."

On April 7, 2021, defendant's motion was heard and denied. Although defense counsel argued the motion, defendant also spoke on his own behalf. His most pertinent statements were as follows:

> "[O]n October 4, 2016, I was brought by the cops to Mary K. Shell for saying that I was going to overdose on my medication with my Jack Daniels and Hennessy. Okay? But they didn't put me on a 5150. They put me on a voluntary hold. They didn't have any room. So they ended up discharging me on October 5, 2016, okay? Because I didn't get help there, I ended up doing what I said I was going to do. That's why I drank the whole bottle of Jack Daniels straight without stopping. And then I guess I don't know if this occurred, but, anyway, during the whole incident, they said I was drinking out of another liquor bottle because I had the Hennessy because I had only two liquor bottles in my backpack."

Defendant went on to suggest the underlying offenses were part of a broader "suicide attempt." However, he also said, "I learned my lesson. Really. I did. I learned my lesson. I knew it was wrong. I shouldn't have ever did that alcohol stuff."

The People opposed the motion, taking the position "that what occurred in this case had less to do with mental health issues but more of choices that [defendant] made to consume alcohol." The People also noted that defendant had previously received mental health treatment but continued to commit crimes, even in a hospital setting. While his appeal was pending in F076882, defendant was convicted of two counts of battery under section 4501.5.

5.

The trial court found some, but not all, of the criteria for relief under section 1001.36 were established. The reasons for denying the motion were as follows:

"[Regarding section 1001.36, subdivision (b)(1)(B),] I have heard [defendant] testify just now or at least speak to the Court of his very lengthy history of treatment, and we also were aware of this back in 2017. When I referred it for evaluation post-trial in the hopes that he could get some treatment in his prison stint and they said he would be a good candidate for probation, but the law doesn't allow for that with the charges we had before us. And was it a significant factor? Well, the Court is not completely convinced on that and that's because, going back quoting the words of [defendant] today was that he drank a lot of alcohol that day. When I read the assessment from 2017, by Ms. Lad or Dr. Lad, in his own words, [defendant] said if he could change anything about that day, he wouldn't have drank. So it's fairly difficult to tell this many years later that this was driven by mental health or was it driven by alcohol.

"[Next, section 1001.36, subdivision (b)(1)(C) requires that,] [i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment. [Defendant] has been in mental health treatment for the better part of his life. And as noted by the People and the record in CLETS, even during those treatment periods he was breaking the law. [¶] … [¶]

"… And as much as I would like to see [defendant] receive mental health treatment and get to a place where he has his mental health under control, I do not believe he is eligible under 1001.36 as I do not believe that this crime was necessarily motivated by his mental health issues as much as it was by drinking alcohol that day. In his own words after the case and, again, he has a history of mental health treatment and has not been able to benefit from that as recognized in his record. [¶] So at this time, the Court does not find him eligible pursuant to 1001.36."

The trial court also declined to strike defendant's prior serious felony conviction enhancement. The previously imposed judgment was thus reinstated. This timely appeal followed. The claims on appeal are limited to the denial of relief under section 1001.36.

## DISCUSSION

"Section 1001.36 authorizes courts to grant pretrial diversion to defendants who meet the statute's six qualifying criteria or eligibility requirements." (*People v. Gerson*

(2022) 74 Cal.App.5th 561, 571.) It is the defendant's burden to make a prima facie showing of eligibility. (*Id*. at p. 572.) "Ultimately, however, diversion under section 1001.36 is discretionary, not mandatory, even if all the requirements are met." (*Id*. at p. 573.) "If mental health diversion is granted and the defendant satisfactorily completes the court's approved mental health treatment program, then the defendant's criminal charges are required to be dismissed and the defendant's arrest on the charges 'shall be deemed never to have occurred.'" (*Id*. at p. 572, quoting § 1001.36, subd. (e).)

A trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders; (2) the disorder was a significant factor in the commission of the charged offenses; (3) a mental health expert has opined the symptoms motivating the criminal behavior would respond to mental health treatment; (4) the defendant consents to diversion and waives his or her right to a speedy trial; (5) the defendant agrees to comply with the prescribed treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)–(F).) Although defendant was denied relief for reasons concerning both the second and third requirements, we need only address the determination made as to section 1001.36, subdivision (b)(1)(B). The provision states:

> "The court [must be] satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense. A court may conclude that a defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense."

7.

"The trial court's determination 'whether the defendant's disorder played a significant role in the commission of the charged offense' is 'a quintessential factfinding process' subject to review for substantial evidence." (*People v. Gerson, supra*, 74 Cal.App.5th at p. 572, quoting *People v. Oneal* (2021) 64 Cal.App.5th 581, 589.) "'On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*Gerson*, at p. 573, quoting *People v. Jones* (1990) 51 Cal.3d 294, 314.) If the substantial evidence test is met, the fact the record might also support contrary findings does not warrant reversal. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

The trial court essentially found defendant's offenses were attributable to the consumption of alcohol and that his mental disorders were not a significant factor in the commission of those crimes. Alcohol dependency was not among the various diagnoses made by the mental health providers who evaluated defendant. Furthermore, during his interview with the probation department in 2017, defendant said he rarely drank alcohol and was not a heavy drinker. Defendant admitted to rapidly consuming a pint of whiskey prior to the subject incident and claimed to not remember what happened afterwards. Those circumstances, combined with evidence he continued drinking liquor from a second bottle "during the whole incident," permits the inference of extreme intoxication. For these reasons we conclude the trial court's finding is supported by substantial evidence.

We also note defendant's trial counsel never attempted to draw a connection between a specific mental disorder and defendant's commission of the offenses. Counsel asserted his personal lay opinion that defendant "was clearly in the midst of a psychotic episode." The psychologist who evaluated defendant in 2017 said nothing about psychosis and merely opined, rather vaguely, that defendant's "mental health symptoms … may have been a mitigating factor into [*sic*] his current offense." While there was

8.

evidence defendant got drunk because of suicidal ideations, he told the probation department and the psychologist who evaluated him in 2017 that he chugged the whiskey because he "ran into some high school students" who "dared him" and he was "trying to 'act cool.'" The conflicting evidence is resolved in favor of the judgment. (*People v. Gerson*, *supra*, 74 Cal.App.5th at p. 573; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848–849.)

Defendant argues the trial court "abused its discretion by focusing on [his] drinking to the exclusion of other contributing factors." He alleges the court misinterpreted section 1001.36, subdivision (b)(1)(B) to require a determination of whether the crimes were attributable to "alcohol *or* mental health, one to the exclusion of the other." In other words, the court allegedly believed "that if [defendant's] drinking was a significant factor in the commission of the crime in this case, it somehow eliminates the possibility that [his] mental disorder also could have been a significant factor." We are not convinced.

"The trial court is presumed to have known and followed the applicable law." (*People v. Castaneda* (1975) 52 Cal.App.3d 334, 342; accord, *People v. Ramirez* (2021) 10 Cal.5th 983, 1042; see Evid. Code, § 664.) "But when a judge's remarks preceding a ruling reflect a misapprehension of the law upon which that ruling is based, the appellate court must consider the judge's remarks in its review." (*People v. Carter* (2014) 227 Cal.App.4th 322, 324.) Here, the trial court quoted the first sentence of section 1001.36, subdivision (b)(1)(B) immediately prior to addressing its criteria: "The Court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." This is strong evidence of the trial court's familiarity with the statute and its requirements.

The trial court later remarked, "[I]t's fairly difficult to tell this many years later that this was driven by mental health or was it driven by alcohol." Later, the court said, "I do not believe that this crime was necessarily motivated by his mental health issues as

9.

much as it was by drinking alcohol that day." While these statements provide some support for defendant's claim, the totality of the circumstances lead us to conclude the trial court did not misapply the law.

## DISPOSITION

The judgment is affirmed.