Filed 11/3/20  P. v. Ramirez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CARLOS RAMIREZ,<br><br>  Defendant and Appellant. | F077884<br><br>(Super. Ct. No. F13908905)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Wallin & Klarich and Stephen D. Klarich for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Carlos Ramirez guilty of raping several prostitutes.  He lured his victims to secluded areas under the pretext of an arm's-length transaction for sex, then falsely identified himself as a police officer and/or threatened them with a stun

gun. The victims had been willing to engage in protected sexual activity for money, but defendant coerced and/or physically forced them to have sex with him without a condom. He was sentenced to an aggregate prison term of 93 years to life.

Defendant presents multiple claims on appeal, two of which the People concede. We accept the concession that four sentencing enhancements based on the use of an allegedly deadly or dangerous weapon must be reversed for insufficient evidence. We also agree that the trial court erred by allowing the jury to change its verdict on a particular count after it had been discharged. The error resulted in defendant being convicted of felonious false imprisonment after the jury had initially found him guilty of a lesser included misdemeanor.

Defendant further contends the trial court applied the wrong legal standard when ruling on his motion for a new trial. The People disagree, but we conclude the record supports defendant's argument. Defendant's remaining claims fail on the merits.

We affirm the judgment subject to correction of the conceded errors. The order denying defendant's motion for new trial is reversed and the matter is remanded for reconsideration of the motion under the correct standard. If the trial court grants the motion, a new trial shall be ordered. If the motion is denied, defendant shall be resentenced based on the reversal of the weapon enhancements and reinstatement of the jury's original verdict of misdemeanor false imprisonment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with 19 criminal counts arising from events occurring over a four-month period in 2013. The case was tried before a jury in 2018. For various reasons, several counts were dismissed during trial.

The charges submitted to the jury consisted of rape by force or fear (Pen. Code,[1] § 261, subd. (a)(2); counts 1, 9, 13 & 16); oral copulation by force or fear (former § 288a,

---

[1]All undesignated statutory references are to the Penal Code.

2.

subd. (c)(2)(A); counts 2, 10, 14 & 17); kidnapping for the purpose of committing rape (§ 209, subd. (b)(1); counts 8, 12 & 15); and falsely identifying oneself to a police officer (§ 148.9; count 19). With the exception of counts 12 and 19, defendant was alleged to have used a deadly or dangerous weapon in the commission of each offense (§ 12022, subd. (b)(1)). Additional kidnapping and multiple-victim allegations were made for purposes of section 667.61, subdivisions (e)(1) and (4), which are part of a sentencing scheme known as the "One Strike" law. (*People v. Mancebo* (2002) 27 Cal.4th 735, 738; *People v. Jones* (1997) 58 Cal.App.4th 693, 703.)

The People's case included testimony by four complaining witnesses, hereafter referred to as victims #1, #2, #3, and #4. Each of them had engaged in prostitution during the relevant time period. The testimony about their separate experiences with defendant showed a distinctive modus operandi.

Defendant convinced his victims to enter his vehicle by agreeing to pay them money for sex. He would then drive to a remote location and threaten the passenger with a weapon, which was alternately described as a Taser or a stun gun. At some point during each incident, defendant falsely identified himself as a police officer. He used his mobile phone to photograph and/or video record parts of the sexual activity. Defendant never paid the women, and he left some of them stranded in desolate areas.

The victims had been willing to provide illicit services for money if defendant wore a condom. Victims ##1 and 2 testified defendant coerced them into performing oral sex and having intercourse without a condom. Victim #3 testified to being coerced into having unprotected intercourse, but she did not substantiate the People's allegation of oral copulation. Victim #4 testified to being "Tased" and claimed defendant used additional physical force to rape her. Victim #4 also did not substantiate the People's allegation of oral copulation.

Defendant testified and denied forcing his accusers to do anything against their will. The defense case focused on discrepancies in the victims' testimony as compared to

3.

their initial reporting of the incidents to police and medical professionals. Defense counsel argued the victims had falsely accused defendant out of anger, i.e., because he had defrauded them by not paying for their services. However, defendant claimed to have paid victim #1, and the defense offered no explanation for why she would have lied about their encounter.

The jury found defendant guilty as charged on counts 1, 2, 9, 10, 13, 16, and 19. He was fully acquitted on the charges of forcible oral copulation against victims ##3 and 4 (counts 14 & 17). The jury found defendant not guilty of aggravated kidnapping (counts 8, 12, & 15) but convicted him of felonious false imprisonment as a lesser included offense. The weapon enhancement allegations were found not true on the counts involving victims ##1 and 4 (counts 1, 2, 15 & 16), and true for those involving victims ##2 and 3 (counts 8, 9, 10 & 13). With regard to section 667.61, the multiple-victim allegations were found to be true but the kidnapping allegations were rejected as not true.

Due to the multiple-victim findings, defendant was sentenced to six consecutive prison terms of 15 years to life (counts 1, 2, 9, 10, 13 & 16). Three additional one-year terms were imposed for the weapon enhancements on counts 9, 10, and 13, resulting in an aggregate prison sentence of 93 years to life. Concurrent determinate terms were imposed for all remaining counts except for the misdemeanor offense of lying to a police officer (count 19), for which defendant apparently received credit for time served. Defendant filed a timely notice of appeal.

## DISCUSSION

### I.     The Weapon Enhancements

Section 12022, subdivision (b)(1) provides for a sentencing enhancement when a defendant is found to have "personally use[d] a deadly or dangerous weapon in the commission of a felony." Defendant was punished under this provision based on his use

of a stun gun or Taser during the offenses charged in counts 8, 9, 10, and 13.**2** Defendant claims, and the People concede, the weapon he used was not proven to be deadly or dangerous within the meaning of the statute. For the following reasons, we accept the concession.

> "In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)

A "deadly or dangerous weapon" (§ 12022, subd. (b)(1)) is an instrument capable of inflicting death or great bodily injury. (*People v. Wims* (1995) 10 Cal.4th 293, 302; *In re Bartholomew D*. (2005) 131 Cal.App.4th 317, 322.) Great bodily injury "means 'injury which is significant or substantial, not insignificant, trivial or moderate.'" (*People v. Blake* (2004) 117 Cal.App.4th 543, 556.) An object is considered inherently deadly or dangerous if it has "no practical nondeadly purpose." (*People v. Stutelberg* (2018) 29 Cal.App.5th 314, 319.) "'Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.'" (*People v. Aledamat* (2019) 8 Cal.5th 1, 6; see *ibid*., fn. 2 [standard for determining whether item is "'deadly or dangerous'" is the same under §§ 245, subd. (a)(1), and 12022, subd. (b)(1)].)

In the People's charging document, defendant was alleged to have used a stun gun. At trial, witnesses called the object a Taser. The prosecutor and defense counsel used

---

**2**The abstract of judgment did not reflect punishment was imposed for the count 8 enhancement.

both terms interchangeably. Tasers and stun guns have similar characteristics, but they are different weapons. (See *People v. Sanchez* (2016) 63 Cal.4th 411, 426; *In re Branden O*. (2009) 174 Cal.App.4th 637, 641.) Parts of the record indicate the item in question was a stun gun, but the trial evidence left the issue open to speculation.[3] More importantly, there was no testimony explaining what Tasers and stun guns are, how they work, or the effects of their use on a person.

A stun gun is "any item, except a less lethal weapon, as defined in Section 16780, used or intended to be used as either an offensive or defensive weapon that is capable of temporarily immobilizing a person by the infliction of an electrical charge." (§ 244.5, subd. (a).) There is no statutory definition of a Taser, but section 16780, subdivision (a) defines a "less lethal weapon" as one that expels "less lethal ammunition … for the purpose of incapacitating, immobilizing, or stunning a human being through the infliction of any less than lethal impairment of physical condition …." We are not aware of any controlling authority classifying Tasers or stun guns as inherently deadly or dangerous weapons. Therefore, the question is whether the trial evidence permitted the jury to find the item defendant used—be it a Taser or a stun gun—was capable of causing death or great bodily injury.

The parties rely on *People v. Racy* (2007) 148 Cal.App.4th 1327, which involved the use of a stun gun on a 74-year-old victim. (*Id*. at pp. 1329–1330.) The issue there was whether the defendant had committed elder abuse "under circumstances or conditions likely to produce great bodily harm or death" as required by section 368, subdivision (b)(1). On a related question of whether "the stun gun itself was capable of producing great bodily harm or death," the appellate court determined the evidence was

---

[3]At the preliminary hearing, the chief investigating officer testified that "although some of [the witnesses] misnamed or referred to the object as a taser, they were all referring—the description of the object that they were using or were describing was a stun gun." This testimony was based on the officer's "training and experience with stun guns and tasers."

insufficient. (*Racy*, *supra*, at p. 1333.) "This [was] so because [the victim] was not injured by the stun gun, and there was no expert testimony that a stun gun used on somebody similar to [the victim] was likely to produce great bodily harm or death. If the only evidence … had been the use of the stun gun, expert testimony would have been necessary because the effects of a stun gun, unlike the effects of more typically used weapons such as knives or handguns, are matters beyond the experience of average jurors." (*Id*. at pp. 1332–1333.)

As discussed, there was no testimony in this case about how Tasers and stun guns work or their effects on people. Victim #4 was the only person who claimed to have been "Tased." Had she testified to the weapon's effect on her, the evidence might have been sufficient to support the enhancements. (See, e.g., *People v. Blake*, *supra*, 117 Cal.App.4th at p. 559 [upholding § 12022 enhancement based on the use of pepper spray where victims described "burning" sensations, temporary blindness, and difficulty breathing].) Neither the victim nor any other witness with knowledge of her encounter with defendant testified that she had experienced pain, injury, or other effects from defendant's use of the weapon. The jury thus had no basis to conclude the weapon was capable of inflicting death or great bodily injury.

The weapon enhancements must be reversed for insufficient evidence. In a related claim, which the People also concede, defendant argues the jury was erroneously instructed on the section 12022 allegations. However, double jeopardy principles bar retrial of those allegations. (See *Burks v. United States* (1978) 437 U.S. 1, 18 ["the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient"]; *People v. Garcia* (2014) 224 Cal.App.4th 519, 526 [reversal of enhancements for insufficient evidence precluded retrial].) Therefore, the claim of instructional error is moot. (See *People v. Pedroza* (2014) 231 Cal.App.4th 635, 660, citing *Burks*, *supra*, at p. 17 [insufficiency of the evidence "implicates double

7.

jeopardy principles and bars retrial, even if the defendant has sought a new trial as a remedy"].)

## II.     Reconvening the Jury After Discharge

### A.     Background

Count 15 alleged kidnapping for the purpose of committing rape.  The jury was instructed on three lesser included offenses:  kidnapping (§ 207, subd. (a)), false imprisonment by violence (§§ 236, 237, subd. (b)), and misdemeanor false imprisonment (§ 237, subd. (a)).  The jury initially returned a verdict of not guilty on the charged crime and both lesser included felonies, and it found defendant guilty of misdemeanor false imprisonment.

After both sides declined to have the jury polled, the trial court made these statements:  "You have now completed your jury service in this case.  On behalf of all the judges of the court, please accept my thanks for your time and effort.  Now that the case is over, you may choose whether or not to discuss the case and your deliberations with anyone.… [¶] … [¶] So that's the last instruction that you have to hear me read to you.  But, again, thank you very, very much, and at this point you're free to go."  The reporter's transcript indicates the jury thereafter "retired from the courtroom."

Sometime later, the trial court went back on the record to say it had been "notified through the clerk that all but one of the jurors remained in the jury room and had told her that they thought there was an error on … Count 15."  Those jurors reportedly called the juror who had departed, and he returned.  The jury then "requested an opportunity to revisit that particular [count]."  Because it had "yet to formally record the verdicts," the trial court believed the jury could reconvene, deliberate further, and change its verdict.

The trial court provided the jury with a new set of verdict forms for count 15.  The jury then found defendant guilty of false imprisonment by violence.  The new verdict was read and recorded.

8.

**B. Analysis**

Defendant argues the trial court lacked jurisdiction to allow the jury to change its original verdict. The People concede the issue, and we accept the concession. The applicable law is summarized in *People v. Garcia* (2012) 204 Cal.App.4th 542:

> "A jury verdict is either complete, incomplete, or otherwise irregular. The verdict is complete when it has been rendered in compliance with section 1164. In other words, when the verdict is ""received and read by the clerk, acknowledged by the jury, and recorded."" (*People v. Bonillas* (1989) 48 Cal.3d 757, 770.) If the jury has been discharged after rendering a complete verdict, ""the trial court has no jurisdiction to reconvene the jury regardless of whether or not the jury is still under the court's control …."" (*Id.* at pp. 770–771, fn. omitted.) …

> "If a complete verdict has not been rendered (i.e., the verdict is incomplete or otherwise irregular), ""jurisdiction to reconvene the jury depends on whether the jury has left the court's control.…"" (*People v. Bonillas*, *supra*, 48 Cal.3d at p. 771.) "[O]nce the court loses control over the jurors, it is without jurisdiction to call them together again." (*Ibid.*; see also *People v. Hendricks* (1987) 43 Cal.3d 584, 596–599; *People v. Bolter* (1991) 227 Cal.App.3d 653, 659–662.)" (*People v. Garcia*, *supra*, 204 Cal.App.4th at p. 551.)

In short, "a jury is powerless to reconsider or amend its verdict once it has been formally discharged by the trial judge and the jury has left the courtroom." (*People v. Soto* (1985) 166 Cal.App.3d 428, 434-435.) Here, although its original verdict had yet to be recorded, the jury was formally discharged and left the courtroom. Therefore, the jury's revised verdict on count 15 "is a nullity." (*Id.* at p. 434, italics omitted; accord, *People v. Thornton* (1984) 155 Cal.App.3d 845, 856 ["The proceedings that occurred after the reconvening were … a nullity, and the case now stands in the position it occupied at the time the jury was initially discharged"].) The remedy is to strike the conviction of false imprisonment by violence and reinstate the jury's original verdict. (See *Thornton*, at p. 860; *People v. Grider* (1966) 246 Cal.App.2d 149, 154.)

### III. Defense Counsel's Reasonable Doubt Argument

During closing argument, defendant's trial counsel attempted to define reasonable doubt using language that deviated from section 1096[4] and the jury instructions. Objections to those efforts were sustained. Defendant claims the rulings violated his constitutional right to a fair trial and effective assistance of counsel. We perceive no error.

#### A. Additional Background

During closing argument, defense counsel used a visual aid containing this statement: "A REASONABLE DOUBT IS THE KIND OF DOUBT THAT WOULD MAKE A REASONABLE PERSON HESITATE TO ACT, IN THE FACE OF IT, IN A MATTER OF LIFE IMPORTANCE IN HIS OR HER OWN PERSONAL OR BUSINESS AFFAIRS." In addition to displaying the written statement, counsel read the words aloud.

The trial court sustained an objection to the argument and told the jury, "You've been given a definition of reasonable doubt. That is the law that you're to abide. That is not part of that instruction." The trial court ordered defense counsel, in reference to the visual aid, to "[p]lease turn it around."

Despite the ruling, counsel proceeded to argue, "[T]hat's how I interpret the language of what reasonable doubt is. Can you—could you rely on it in making a decision of life importance in your own life[?] …" This prompted another objection and a sidebar conference. Shortly thereafter, the defense closing argument ended.

---

[4]Section 1096 states, in pertinent part, "Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.'"

10.

**B.      Analysis**

"It is firmly established that a criminal defendant has a constitutional right to have counsel present closing argument to the trier of fact.  [Citations.]  Nonetheless, it is equally settled that a judge in a criminal case 'must be and is given great latitude in controlling the duration and limiting the scope of closing summations.'  [Citations.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1184.)  A trial court's decision to limit defense counsel's closing argument is reviewed for abuse of discretion.  (*People v. Simon* (2016) 1 Cal.5th 98, 147.)

The United States Supreme Court has approved of "alternative" definitions of reasonable doubt phrased in terms of "a doubt that would cause a reasonable person to hesitate to act." (*Victor v. Nebraska* (1994) 511 U.S. 1, 20.)  The instruction in *Victor* said reasonable doubt "'is such a doubt as would cause a reasonable and prudent person, *in one of the graver and more important transactions of life*, to pause and hesitate before taking the represented facts as true and relying and acting thereon.'" (*Id*. at p. 18, italics added.)  The majority opinion in *Victor* did not specifically address the italicized language, but it was criticized in the concurring opinion of Justice Ginsberg.  (*Id*. at pp. 24–25.)  In any event, the definition formulated by defense counsel in this case was more loosely and ambiguously phrased in terms of a "matter of life importance" in one's "personal or business affairs."

The California Supreme Court has said "that jurors should not be instructed to convict based on the level of certainty needed to make decisions 'in the ordinary affairs of life.'" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 841, quoting *People v. Brannon* (1873) 47 Cal. 96, 97.)  Other appellate decisions "strongly disapprove of arguments suggesting the reasonable doubt standard is used in daily life …." (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 36; accord, *People v. Johnson* (2004) 119 Cal.App.4th 976, 985 [murder conviction reversed for instructional error; "equating proof beyond a reasonable doubt to everyday decisionmaking in a juror's life lowers the burden of proof

11.

to a preponderance of the evidence"].)  In light of these authorities and the potentially confusing nature of defense counsel's argument, the trial court did not abuse its discretion by sustaining objections to counsel's definition of reasonable doubt.

## IV.     CALCRIM No. 3181

### A.     Alleged Instructional Error

CALCRIM No. 3181 is given when a multiple victim allegation has been pleaded pursuant to section 667.61, subdivision (e)(4).  The instruction reads:

> "If you find the defendant guilty of two or more sex offenses, as charged in Counts _____ *<insert counts charging sex offense[s] from Pen. Code, § 667.61(c)>*, you must then decide whether the People have proved the additional allegation that those crimes were committed against more than one victim in this case.  [¶] The People have the burden of proving this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that this allegation has not been proved."

Defendant alleges the trial court erred by including CALCRIM No. 3181 in the predeliberation instructions.  He claims the instruction must not be given until after the jury has returned its verdicts on the applicable counts.  The only authority cited for this proposition is *People v. Carbajal* (2013) 56 Cal.4th 521.

The issue in *Carbajal* was whether jurors could make a finding on a multiple victim allegation despite being deadlocked on all charges involving one of the two alleged victims.  (*People v. Carbajal*, *supra*, 56 Cal.4th at pp. 525–529.)  The case holds that "a jury cannot return a valid verdict on a multiple victim allegation where the jury has not rendered the underlying verdicts that comprise the essential predicate for its consideration of the allegation.  In other words, a jury cannot consider a penalty allegation that turns solely on its assessment of an underlying verdict that it has not reached."  (*Id*. at p. 536.)

The *Carbajal* opinion does not mention CALCRIM No. 3181.  Notwithstanding defendant's strained reading of the last quoted sentence above, *Carbajal* does not suggest jurors cannot be *instructed* on multiple victim allegations until after they have reached a

12.

decision on the substantive charges. "It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court." (*People v. Harris* (1989) 47 Cal.3d 1047, 1071.) Defendant must "affirmatively demonstrate prejudicial error" (*People v. Garza* (2005) 35 Cal.4th 866, 881), and the requisite showing has not been made.

### B. Alleged *Marsden* Error

The preceding claim of instructional error originated in defendant's motion for a new trial. Defendant's trial counsel argued he had been negligent, and had thus rendered ineffective assistance, by failing to object to CALCRIM No. 3181 being given "before [the jury] had returned its verdicts on the underlying charges." The trial court rejected this argument and said it would have overruled such an objection.

Defendant now contends his trial counsel's self-admission of deficient performance necessitated a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. The *Marsden* decision governs a defendant's request "to discharge his appointed counsel and substitute another attorney during the trial." (*Id.* at p. 123.) However, the record on appeal shows defendant was represented by "private counsel," i.e., "retained" counsel.

"Because the right to discharge retained counsel is broader than the right to discharge appointed counsel, a *Marsden*-type hearing … is '"[an] inappropriate vehicle in which to consider [the defendant's] complaints against his retained counsel."'" (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429.) Furthermore, "a request for new trial based on a defendant's claim of ineffective assistance of counsel does not trigger the court's duty to conduct a *Marsden* hearing if the defendant's desire for substitute counsel is not made clear." (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484; accord, *People v. Sanchez* (2011) 53 Cal.4th 80, 90, fn. 3 [disapproving of cases that had "incorrectly implied that a *Marsden* motion can be triggered with something less than a clear indication … that the defendant 'wants a substitute attorney'"].) Defendant did not clearly express a desire for substitute counsel, so his claim fails.

13.

## V.     Denial of Motion For New Trial

### A.     Background

Defendant moved for a new trial on three grounds, two of which concerned CALCRIM No. 3181 and defense counsel's reasonable doubt argument. Defendant further alleged the verdicts were "contrary to [the] evidence" within the meaning of section 1181, subdivision 6 (section 1181(6)). The latter argument was presented under a heading stating "the [jury's] verdict … was based upon an unreasonable reliance on testimony that was clearly not credible." (Capitalization omitted.)

Defendant's moving papers argued "the jury unreasonably disregarded the logical relationship between the admissions of the complaining witnesses that they were engaging in acts of moral turpitude [(prostitution)] at the time [of] the alleged acts, the conflicting testimony they offered, and their motivations for bringing the allegations against [defendant] after he failed to pay them for their illegal services." He specifically remarked upon the supposedly "obvious and inherent lack of credibility in the [victims'] testimony." These statements were followed by three pages of discussion highlighting inconsistencies in the victims' testimony on direct and cross-examination, as well as discrepancies in the trial testimony as compared to the victims' pretrial allegations.

The trial court issued a written tentative ruling. Given the nature of defendant's claim, we quote the trial court's entire analysis of the issue:

> "The jury was aware the victims were actively engaged in prostitution at the time of the offenses. The jury was aware of any allowable crimes of moral turpitude that could be used to impeach the alleged victims. The jury also heard all of the testimony and was aware of any potential inconsistencies or conflicts in the testimony. Both counsel were free to argue all of those points, and in fact did so.
>
> "Defendant's disagreement with the jury's determination of what evidence was credible and/or convincing is not a basis for granting a new trial. There was ample evidence before the jury that would allow a reasonable juror to conclude the defendant was guilty of the crimes and

14.

enhancements charged.  The court denied Defendant's motion to dismiss pursuant to … section 1118.1 for that reason.

"Defendant states in his Motion at page 14, 'In this case, the jury unreasonably disregarded the logical relationship between the admissions of the complaining witnesses that they were engaging in acts of moral turpitude at the time the alleged acts, the conflicting testimony they offered, and their motivations for bringing the allegations against [defendant] after he failed to pay them for their illegal services.'  Engaging in prostitution, or any other act involving what the court recognizes as moral turpitude, does not render that person's testimony inherently unreliable or unbelievable.  The jury determines what weight, if any, to give that factor.  The jury determines what weight if any to give any motivations of the victims, inconsistencies, or conflicts.

"The jury was properly instructed on the issue of witness credibility.  The jury was also properly instructed regarding how it could use inconsistencies or conflicts it found in witnesses' testimony.

"Defendant does not know, nor should he, what the jury's deliberative process was.  Defendant has no way of knowing, nor should he, was [*sic*] specific testimony or other evidence the jury found credible or convincing.  The jury's verdicts and special findings were within the range of what a reasonable juror could find based upon the evidence presented."

When the motion was heard, defense counsel briefly noted defendant's position regarding "the insufficiency of the evidence in terms of the credibility of the witnesses." The trial court made these statements:

"Well my ultimate conclusion when it comes to those issues is that that was a determination being made by the jury.  The jury was instructed on how they could use things including witnesses['] inability to remember things, and they were properly instructed, and that's within their purview.  So the Court is not going to second guess their weighing of the evidence or assignment of credibility to various witnesses.  At this point the Court is going to be adopting the tentative order as the order of the Court."

## B.    Analysis

Defendant claims the trial court used the wrong standard to evaluate his motion for new trial by essentially treating it as a motion for a judgment of acquittal.  The People

argue forfeiture, dispute the claim on the merits, and alternatively contend the error was harmless.  As we explain, defendant has demonstrated reversible error.

Section 1181(6) authorizes the granting of a new trial "[w]hen the verdict or finding is contrary to law or evidence."  The statute does not explain how such a determination is made, but the standard is well established in case law.  (See further discussion, *post*.)  "A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion."  (*People v. Hayes* (1999) 21 Cal.4th 1211, 1260–1261.)  However, "[a] trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85; accord, *People v. Knoller* (2007) 41 Cal.4th 139, 156.)

We first consider the People's forfeiture argument.  "As a general rule, only 'claims properly raised and preserved by the parties are reviewable on appeal.'"  (*People v. Smith* (2001) 24 Cal.4th 849, 852.)  Defendant's motion identified section 1181(6) as the statutory basis for relief and presented a detailed argument concerning the believability of critical witness testimony.  However, the moving papers did not further discuss the applicable law, and no objections were made to the trial court's analysis.

The People cite *People v. Carter* (2014) 227 Cal.App.4th 322, a case in which an order denying a motion for new trial was reversed due to the trial court's confusion over the applicable law.  (*Id*. at pp. 328–329.)  The appellate court, in rejecting a similar forfeiture argument, noted the appellant had "argued the correct legal standard to determine the motion" in his moving papers.  (*Id*. at p. 327, fn. 2.)  By reverse inference, the People reason defendant's moving papers were deficient.  They also fault him for not making an objection at the motion hearing.  These arguments are not entirely convincing.  (See *People v. Braxton* (2004) 34 Cal.4th 798, 814 ["A trial court is presumed to know the governing law, and litigants generally are not required, on pain of forfeiting valuable rights, to remind trial courts of relevant statutory provisions"]; cf. *People v. Memory*

(2010) 182 Cal.App.4th 835, 857 ["While a party will forfeit a claim by failure to obtain a ruling [citation], we are aware of no authority … that requires a party to continue to object to the court's ruling after a contested hearing to preserve the issue for appeal"].) Nevertheless, assuming the claim was not preserved for review, we elect to consider it in order to "forestall a petition for writ of habeas corpus based on a claim of ineffectual counsel." (*People v. Williams* (2000) 78 Cal.App.4th 1118, 1126; accord, *People v. Lewis* (1990) 50 Cal.3d 262, 282; see *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].)

On the question of error, the law is explained in *Porter v. Superior Court* (2009) 47 Cal.4th 125 (*Porter*). "In the trial court, a defendant may attack the evidence against him in two ways. A motion under section 1118.1 seeks a *judgment of acquittal* for insufficient evidence.… A motion under section 1181(6) seeks a *new trial* because the verdict is 'contrary to law or evidence.' The court performs significantly different tasks under these two provisions." (*Id.* at p. 132.)

"In ruling on an 1118.1 motion for judgment of acquittal, the court evaluates the evidence in the light most favorable to the prosecution. If there is any substantial evidence, including all inferences reasonably drawn from the evidence, to support the elements of the offense, the court must deny the motion." (*Porter*, *supra*, 47 Cal.4th at p. 132.) "In considering this legal question, 'a court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation]." (*Ibid*.)

Conversely, the trial court "extends no evidentiary deference in ruling on a section 1181(6) motion for new trial. Instead, it independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable

17.

doubt *to the judge*, who sits, in effect, as a '13th juror.' [Citations.] If the court is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the jury's verdict is 'contrary to [the] … evidence.' [Citations.]" (*Porter*, *supra*, 47 Cal.4th at p. 133.)

In other words, a section 1181(6) motion requires the trial court "to review the evidence independently and satisfy itself that the evidence as a whole is sufficient to sustain the verdict." (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1251.) If it subjectively views the evidence as "not sufficiently probative to sustain the verdict, it must order a new trial." (*Id.* at p. 1252.) "Although the trial court is to be 'guided' by a presumption in favor of the correctness of the jury's verdict [citation], this means only that the court may not *arbitrarily* reject a verdict which is supported by substantial evidence." (*Id.* at p. 1251.) "*The trial court is not bound by the jury's determinations as to the credibility of witnesses or as to the weight or effect to be accorded to the evidence.*" (*Id.* at pp. 1251–1252, italics added; accord, *People v. Robarge* (1953) 41 Cal.2d 628, 633–634.)

A trial court is presumed to have known and followed the applicable law. (*People v. Castaneda* (1975) 52 Cal.App.3d 334, 342; see Evid. Code, § 664.) "But when a judge's remarks preceding a ruling reflect a misapprehension of the law upon which that ruling is based, the appellate court must consider the judge's remarks in its review." (*People v. Carter*, *supra*, 227 Cal.App.4th at p. 324.) Here, the trial court focused on irrelevant factors such as the jury instructions and the jury's province to weigh the evidence and make credibility determinations. It even referenced section 1118.1, which governs a motion for judgment of acquittal, and said, "There was ample evidence before the jury that would allow a reasonable juror to conclude the defendant was guilty …." These statements show no recognition of, and are contrary to, the trial court's duty to make an "independent determination as to the probative value of the evidence" and

18.

"satisfy *itself* that the evidence as a whole is sufficient to sustain the verdict." (*People v. Dickens*, *supra*, 130 Cal.App.4th at pp. 1252, 1251, italics added.)

In *People v. Watts* (2018) 22 Cal.App.5th 102, the trial court's confusion over the correct standard was apparent from its rejection of evidentiary arguments as "'not a basis for a motion for new trial.'" (*Id.* at p. 110.) The court had also stated, "'It's not for me to reweigh the evidence,'" "'it's not for me to second guess the jury,'" and "'My job … is not to retry the case in my head and do whatever you want me to do because you think the evidence wasn't sufficient enough for the jury." (*Id.* at p. 111.) The trial court in this case made similar remarks, e.g.: "Defendant's disagreement with the jury's determination of what evidence was credible and/or convincing is not a basis for granting a new trial," "The jury determines what weight if any to give any motivations of the victims, inconsistencies, or conflicts," and "the Court is not going to second guess their weighing of the evidence or assignment of credibility to various witnesses." These statements indicate that the wrong standard was used to evaluate defendant's motion for a new trial.

The People, despite correctly noting the trial court's statements must be considered in their entirety, focus on isolated words and phrases: "'[T]*here was ample evidence* before the jury that would allow a reasonable juror to conclude the defendant was guilty of the crimes and enhancements charged'" and "'[T]he jury's verdicts and special findings were within the range of what a reasonable juror could find *based upon the evidence presented*.'" When read in context, these remarks allude to the "any rational trier of fact" standard of section 1118.1, not the "13th juror" standard of section 1181(6). (*Porter*, *supra*, 47 Cal.4th at pp. 132–133.) A trial court may conclude the evidence is "'more than sufficient'" to support the verdict of reasonable jurors and still grant a motion for new trial based on its subjective view "of the weight of the evidence and witness credibility." (*People v. Carter*, *supra*, 227 Cal.App.4th at pp. 326, 328.) The

excerpts upon which the People rely are not indicative of an "independent assessment of the evidence." (*Id.* at p. 328.)

This case is unlike *People v. Davis* (1995) 10 Cal.4th 463, where despite "isolate[d] statements in which the trial court refer[red] to the jury's verdicts," it had "expressly articulated the correct standard of review" and the record clearly reflected an independent assessment of "the credibility of the witnesses and the probative value of the evidence." (*Id.* at p. 524.) Also distinguishable is *People v. Price* (1992) 4 Cal.App.4th 1272, where a trial judge had merely said, "'I think the evidence was sufficient, and I think that the jury—there was enough evidence there for the jury to do what the jury did ….'" (*Id.* at p. 1275, italics omitted.) In *Price*, one ambiguous statement did not rebut the presumption a trial court knows and applies the correct law. The *Price* court construed the words "'I think the evidence was sufficient'" as the actual ruling and treated the additional comment as "surplusage." (*Id.* at p. 1275.) Here, in contrast, the trial court's relatively extensive discussion shows a conflation of the standards applicable to motions under sections 1118.1 and 1181(6). The appropriate remedy is a limited remand for reconsideration of the section 1181(6) motion under the correct legal standard. (*People v. Knoller*, *supra*, 41 Cal.4th at p. 158; *People v. Robarge*, *supra*, 41 Cal.2d at p. 635; *People v. Watts*, *supra*, 22 Cal.App.5th at pp. 114–115.)

The People argue harmless error, but their reliance on *People v. Braxton*, *supra*, 34 Cal.4th 798 is misplaced. In *Braxton*, a trial court had declined to rule on a motion for new trial predicated upon alleged juror misconduct. The opinion acknowledges there may be cases in which "the appellate record allows the reviewing court to determine, as a matter of law, that the new trial motion lacked merit or that the trial court would properly have exercised its discretion to deny the motion." (*Id.* at p. 820.) "*On the other hand*, *if the appellate record does not permit the reviewing court to make this determination*, *then the reviewing court normally should remand the matter to the trial court*." (*Ibid.*, italics

added.)  Since the merits of defendant's motion for a new trial can only be determined by the trial court's independent assessment of the witnesses' testimony, remand is necessary.

## VI.      Alleged Sentencing Error

Defendant received the statutorily mandated punishment of 90 years to life in prison.  He was approximately 35 years old when he committed the underlying offenses.  Defendant challenges his sentence as unconstitutionally cruel and/or unusual.

As used in the Eighth Amendment to the federal Constitution, the phrase "cruel and unusual punishments" refers to "'extreme sentences that are "grossly disproportionate" to the crime.'"  (*Graham v. Florida* (2010) 560 U.S. 48, 59–60.)  The California Constitution forbids cruel or unusual punishment (Cal. Const., art. I, § 17), which precludes a sentence that is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'"  (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1085, quoting *In re Lynch* (1972) 8 Cal.3d 410, 424.)  Defendant focuses on the California standard, whereunder reviewing courts "first examine 'the nature of the offense and the offender, with particular regard to the degree of danger which both present to society'"; then "compare the challenged penalty to 'punishment prescribed in the same jurisdiction for other more serious offenses'"; and finally, "compare the challenged penalty to 'punishment prescribed for the same offense in other jurisdictions.'"  (*People v. Crooks* (1997) 55 Cal.App.4th 797, 806.)

Defendant had no felony convictions prior to this case.  He complains of receiving the same punishment for each of his sex crimes as is imposed for "more serious" offenses such as second degree murder (§§ 187, 190, subd. (a)) and carjacking for the benefit of a criminal street gang (§§ 186.22, subd. (b)(4)(B), 215).  He also contends that California punishes rape more severely than any other state except Louisiana.

21.

The crime of rape is ordinarily punishable by a prison term of three, six, or eight years.  (§ 264, subd. (a).)  The crime of forcible oral copulation is ordinarily punishable by a prison term of three, six, or eight years.  (§ 287, subd. (c)(2)(A).)  Defendant was sentenced to multiple indeterminate life terms because section 667.61 imposes severe punishment upon people who have committed sex crimes against multiple victims.  Defendant fails to discuss section 667.61 in his cursory argument on the sentencing issue.

"The 'One Strike' law, section 667.61, is an alternative sentencing scheme that applies to specified felony sex offenses."  (*People v. Reyes* (2016) 246 Cal.App.4th 62, 79.)  The statute was enacted "to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction."  (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1296.)  Accordingly, because he victimized four different women, defendant was sentenced to 15 years to life in prison for each conviction of forcible rape and forcible oral copulation.  (§ 667.61, subds. (c)(1) & (7), (e)(4).)  Several appellate court decisions have upheld sentences imposed under section 667.61 against defendants with little or no prior criminal history.  (E.g., *People v. Alvarado* (2001) 87 Cal.App.4th 178, 199–200 [18-year-old defendant with no criminal record and mitigating life circumstances sentenced to 15 years to life for rape committed during a burglary]; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1278, 1282 [38-year-old defendant with no prior felony convictions sentenced to 25 years to life for rape committed after entering victim's apartment with the intent to commit rape]; *People v. Crooks*, *supra*, 55 Cal.App.4th at pp. 805, 807 [39-year-old defendant with no prior felony convictions sentenced to 25 years to life for rape committed during residential burglary].)

The circumstances of defendant's case are quite similar to those in *People v. Andrade* (2015) 238 Cal.App.4th 1274.  The appellant in *Andrade* was sentenced under section 667.61, subdivision (e)(4) to 13 consecutive terms of 15 years to life for committing forcible rape and forcible oral copulation against several prostitutes.  (*Andrade*, *supra*, at pp. 1281–1286, 1304–1305.)  He had lured the victims into his car,

driven them to isolated areas, and sexually assaulted them at gunpoint. In most instances, he had also falsely identified himself as a police officer. (*Id*. at pp. 1281–1286.)

The *Andrade* rapist had no prior criminal record, and "the probation department report assessed him as a low risk for recidivism." (*People v. Andrade*, *supra*, 238 Cal.App.4th at p. 1310.) Nevertheless, the appellate court concluded "his pattern of targeting young, vulnerable women, coupled with his threats and statements that he was affiliated with law enforcement, demonstrated an intent to avoid detection by intimidating his victims." (*Ibid*.) His sentence of 195 years to life was held to be "neither shocking nor inhumane when the nature of the offenses and offender [were] considered." (*Ibid*.)

Defendant's case is not materially distinguishable from *Andrade* on the issue of cruel and/or unusual punishment. He raped at least four victims over a period of three months, and there is every indication his pattern of behavior would have continued had he not been apprehended and prosecuted. "[W]hen faced with an allegation that a particular sentence amounts to cruel and unusual punishment, '[r]eviewing courts … should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes ….'" (*People v. Reyes*, *supra*, 246 Cal.App.4th at p. 83, quoting *Solem v. Helm* (1983) 463 U.S. 277, 290.) Following this principle, and given the absence of any exceptional circumstances, we conclude defendant's sentence is not unconstitutional under federal or state law.

## VII.   Alleged Cumulative Error

Defendant alleges cumulative error. Under the cumulative error doctrine, "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844; accord, *People v. Capers* (2019) 7 Cal.5th 989, 1017.) The only errors demonstrated in this appeal concern the weapon enhancements, which are being reversed, and certain posttrial proceedings. The cumulative effect of those errors clearly did not

23.

deprive defendant of his right to a fair trial.  (See *People v. Cuccia* (2002) 97 Cal.App.4th 785, 795 ["The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial'"].)

## DISPOSITION

All enhancements imposed under section 12022, subdivision (b)(1) are reversed for insufficient evidence and ordered stricken from the judgment.  The count 15 conviction of false imprisonment by violence is ordered stricken from the judgment and the jury's original verdict of misdemeanor false imprisonment shall be reinstated. Defendant shall be resentenced accordingly.  In all other respects, the judgment is affirmed.

The order denying defendant's motion for a new trial is reversed and the matter is remanded for further proceedings.  On remand, the trial court shall reconsider the motion under the standard applicable to section 1181, subdivision 6.  If the motion is granted, the trial court shall grant appropriate relief, which may include ordering a new trial on any charges not otherwise affected by the disposition of this appeal.  If the motion for a new trial is denied, the trial court shall resentence defendant in light of the stricken enhancements and corrected verdict on count 15.

PEÑA, Acting P.J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.