Filed 10/12/21  P. v. Hart CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH PHILLIP HART,<br><br>        Defendant and Appellant. | A161239<br><br><br>(Mendocino County Super. Ct. No. SCUK-CRCR-20-34746-001) |

Joseph Phillip Hart appeals from the judgment entered against him after he was convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1]  Hart argues that the trial court abused its discretion by denying his motion for new trial.  We disagree and affirm.

## BACKGROUND

### A.

In March 2020, J.S. invited Hart to stay with him at a rural property outside Laytonville, where J.S. worked as a caretaker.  About two weeks later, J.S. asked Hart to leave.  On direct examination, J.S. testified that he asked Hart to leave because Hart had gone through other people's possessions.  J.S. said he offered Hart two weeks to find a new place to stay, but Hart wanted to leave right away.  Because it was

---

[1] Undesignated statutory references are to the Penal Code.

the middle of the night and raining, they agreed that J.S. would drive Hart to Willits the next morning.

J.S. testified that Hart was slow to pack his belongings the next day. But, when J.S. insisted that Hart needed to leave, Hart agreed. In the early afternoon, the two men left in a truck. J.S. drove, smoking marijuana from a bong at the same time.

Near Laytonville, J.S. stopped so that Hart could urinate. According to J.S., Hart exited and re-entered the truck through its passenger-side door, which functioned normally. After the two had been back on the road only five minutes, Hart asked J.S. to stop again—for another bathroom break. J.S. found this strange, especially since they were now only five to 10 miles from Willits, and refused.

Hart continued to demand that J.S. pull over. As they approached the first Willits exit, Hart called 911 and reported that he was being " 'kidnapped.' " J.S. exited the freeway. When the truck arrived at a stop sign, Hart pinned J.S. to the driver's side door and stabbed him, with a knife, in the chest, leg, hand, and forehead.

J.S. testified that he did not have a knife or a gun that day. He did not recognize either of the two knives police later found in the truck. J.S. also testified that he never pointed a gun at Hart. Although he initially testified that there were no guns at the property where the two had been living, J.S. later said the owners kept a shotgun there. J.S. did not threaten Hart to persuade him to leave.

### B.

The driver of a California Department of Transportation (CalTrans) truck pulled over when he saw two men struggling inside J.S.'s truck. He observed the passenger on top of the driver, punching

2

him, and the driver calling for help. When the driver freed himself, he got into the CalTrans truck and said, " 'That guy's crazy. He stabbed me.' "

Hart later paced around the CalTrans truck, banged on its window, and screamed. Hart asked the CalTrans driver to call the police and an ambulance. He also claimed that he stabbed J.S. because J.S. " 'had a gun.' " Hart appeared "really crazy, and aggressive."

Another driver pulled over when he saw J.S. getting out of his truck. He said J.S. was bleeding, scared, and calling for help. He also saw Hart, who yelled "aggressive[ly]" that "it wasn't his fault" and that "[J.S.] put a gun to his face."

## C.

Hart first told a responding police officer that he and J.S. got into a fight, during which J.S. pulled out a knife. Hart said he stabbed J.S. to defend himself. Hart later told the same officer that J.S. pulled a .38-caliber pistol on him.

Hart directed the officer to the bed of the truck, where the officer found a knife. The officer found a second knife (in a dual-knife sheath) on the truck seat "closer towards the driver." Officers also found marijuana in the truck, as well as a broken bong underneath. No gun was found at the scene. Officers did not search the property where Hart and J.S. had been living. Officers were able to open the passenger-side door, from the interior of the truck, without trouble.

When Hart was interviewed later that same day, he said that J.S. was holding a ".38-caliber snub-nosed pistol" around 11:00 a.m., when J.S. told him to leave. Hart did not claim that J.S. pointed the gun at

3

him.  Nor did he know if J.S. brought the gun with him on the drive to Willits; Hart never saw it again.

Hart said he was scared because, after the initial stop, J.S. was smoking marijuana and driving 70 miles per hour.  When Hart asked J.S. to stop a second time, J.S. slapped him.  Hart responded by punching J.S. and pushing him up against the driver's side door.  Hart then saw that J.S. was sitting on a knife.  Hart grabbed the knife and stabbed J.S. three times—in the leg, thigh, and face.  Hart told the detective that he only wanted to get out of the truck but was unable to open the passenger side door.

### D.

Hart testified, in his own defense, that he and J.S. agreed to grow marijuana and vegetables on the property where J.S. worked.  When Hart arrived in March 2020, he bought provisions (including seeds) and "paid the mortgage"—by giving J.S. a pound of marijuana to sell.  In exchange, Hart expected a larger return after the fall harvest.

Later that same month, Hart confronted J.S. about overwatering some seedlings.  J.S. became "belligerent" and told Hart, "people disappear up [here.]"  However, Hart testified that this was not "a big argument[]" and that he never screamed at J.S.  J.S. simply agreed to take better care of the seedlings and Hart laughed off J.S.'s disappearance comment.

The next day, J.S. came into Hart's room, holding a .38-caliber gun at his side, and screamed that Hart needed to leave the property in an hour, or else J.S. would kill him.  When Hart asked J.S. if he was joking, J.S. pointed the gun at Hart.  Despite believing that his investment entitled him to stay through the summer, Hart took the

4

threat seriously and agreed to leave. While Hart was packing, J.S. yelled at him again. Hart never saw the gun again, but he assumed J.S. still had it because J.S.'s hand was in his pocket.

When Hart took a bathroom break during the drive to Willits, he discovered that he could not open the passenger-side door from the inside. The truck hydroplaned shortly after J.S. resumed driving. Hart was scared because J.S. was smoking marijuana and driving 80 miles per hour in heavy rain. Hart asked J.S. to stop the truck "at least 30 times," but J.S. refused. When the truck hydroplaned a second time, Hart called 911. Hart told the dispatcher that J.S. "pulled a gun on [him]" earlier in the day, but the call dropped.

On the freeway off-ramp at the Willits exit, Hart asked to stop again. J.S. backhanded him and said, "quit being a bitch." Hart decided he could no longer wait to get out of the truck and punched J.S. Hart testified that he tried to open the passenger-side door, but "it did not open." Hart pinned J.S. against the driver's-side door and held J.S.'s right arm, to ensure that "[J.S.] didn't pull a gun on [him] and shoot [him]."

Next, Hart saw J.S. reach down between his legs, towards a double knife pouch. Hart quickly grabbed one of the knives and stabbed J.S. twice in the leg. Hart initially testified that J.S. laughed, "basically grabbed onto that second knife," and said that he was "going to cut [Hart] up." At this point, Hart stabbed J.S. in the side and J.S. exited the truck. Later, Hart testified that J.S. "did not actually have that knife in his hand" but was reaching for it.

Hart said he initially stabbed J.S. because he was afraid that "if [J.S.] got the knife, he was going to stab me." Hart did not know if J.S.

5

had a gun but, after the two men exited the truck, Hart put the knife he used into the bed of the truck.

Hart approached the driver of the CalTrans truck only to request that the driver call 911 and take J.S. to the hospital. He was not chasing or threatening J.S. Hart himself called 911, admitted stabbing J.S., and told dispatch that earlier in the day J.S. "put[ ] a gun to my . . . head." At trial, Hart conceded that the gun was never held to his head. He testified that J.S. pointed the gun towards his face, from six feet away.

Hart stipulated that he had previously been convicted of a felony—armed robbery.

### E.

The jury convicted Hart of assault with a deadly weapon. Hart admitted a prior strike allegation (§§ 668, 1170.12, subd. (b)(2)). Before sentencing, Hart filed a motion for a new trial, contending the evidence was insufficient to support the jury's verdict (§ 1181, subd. 6) and that newly discovered evidence undermined the verdict's reliability (§ 1181, subd. 8). The trial court denied Hart's motion and sentenced him to six years in state prison.

### DISCUSSION

### A.

Hart contends his discovery of new evidence entitled him to a new trial. He insists his constitutional due process rights were violated because the trial court's ruling deprived him of the opportunity to present a defense. Applying the abuse of discretion standard (*People v. Howard* (2010) 51 Cal.4th 15, 42-43), we conclude the trial court did not err.

6

**1.**

A motion for new trial based on newly discovered evidence must be supported by "the affidavits of the witnesses by whom such evidence is expected to be given." (§ 1181, subd. 8.)

In deciding a motion for new trial based on newly discovered evidence, the trial court considers whether the evidence is: (1) in fact newly discovered; (2) not merely cumulative; (3) such that would render a different result probable on retrial; (4) evidence that could not have been discovered and produced at trial with reasonable diligence; and (5) presented " ' " 'by the best evidence of which the case admits.' " ' " (*People v. Howard, supra,* 51 Cal.4th at p. 43.)

**2.**

Hart's motion for new trial was supported by two victim impact statements J.S. purportedly submitted to the trial court before sentencing—only one of which is in the record before us. In his motion, Hart maintained that J.S. wrote, " 'After some days staying with me[, at the property,] a disagreement broke out and [Hart] began to physically get bigger, louder and more threatening to me.' " In the statement that appears in the record, J.S. stated, "[W]e had a little disagreement [and Hart] got very loud and violent with his body movements[.] I politely asked him to find another place to stay . . . . [H]e said if I have to leave the property then let's go now[.] [I]t was raining [and] night time[.]"

Hart argued J.S.'s victim impact statement constituted new evidence because it created "a totally different impression" than did J.S.'s testimony before the jury. According to Hart, J.S. was suggesting for the first time that he asked Hart to leave the property because Hart

7

was angry and threatening. Hart insisted J.S.'s new characterizations were material because such evidence increased the credibility of Hart's testimony that J.S. used a gun to force him from the property.

The trial court heard and denied the motion immediately before Hart was sentenced. In doing so, it observed that J.S.'s victim impact statement was not a sworn affidavit. The court also concluded that the evidence was not material because it did not relate to the key issue at trial—what occurred in the truck. Finally, the trial court concluded that Hart could not show admission of such collateral impeachment evidence would make a different result reasonably probable.

**3.**

The trial court did not abuse its discretion.

Because Hart relied solely on J.S.'s unsworn letter and presented no affidavit, we must affirm on this basis alone. (See § 1181, subd. 8; *People v. House* (1969) 268 Cal.App.2d 922, 924.)

Furthermore, the trial court properly denied the motion because the newly discovered evidence did not render a different result probable on retrial. "[A] motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant." (*People v. Martinez* (1984) 36 Cal.3d 816, 823.) Retrial is generally not required when the newly discovered evidence merely impeaches the opposing party's witness, whose testimony is otherwise corroborated. (*People v. Salazar* (2005) 35 Cal.4th 1031, 1050; *People v. Jimenez* (2019) 32 Cal.App.5th 409, 422.)

We assume the newly discovered evidence contradicts J.S.'s testimony (on direct examination) about why he asked Hart to leave the

8

property. However, the key dispute at trial was not about why Hart left or what occurred at the property hours before the drive to Willits. The key factual issue for the jury was determining what occurred in the truck and whether Hart stabbed J.S. in self-defense.

The victim impact statement does not contradict the strongest evidence against Hart—J.S.'s testimony that Hart stabbed him without physical provocation and that J.S. never had a knife or a gun. Hart testified that he stabbed J.S. in self-defense because he had been slapped, he could not exit the truck, and he feared J.S. would stab him. The jury rejected Hart's version of events and found J.S.'s testimony more credible. Hart's guilt was also corroborated by the evidence that the truck's passenger door functioned normally, the independent witnesses who observed Hart behaving aggressively, and the numerous inconsistencies in Hart's various explanations.

The newly discovered evidence—of Hart's threatening behavior at the Property—does not contradict J.S.'s testimony about what occurred in the truck or make Hart's own testimony about the stabbing any more credible. Furthermore, J.S. testified on cross-examination that he told Hart to leave the property because he did not like Hart's meddling and "drama." J.S. recounted that Hart had accused him of overwatering seedlings on the property. Hart raised his voice, which upset J.S. On this record, it is highly unlikely that the newly discovered evidence would lead to a different result on retrial. (See *People v. Delgado* (1993) 5 Cal.4th 312, 328; *People v. Soojian* (2010) 190 Cal.App.4th 491, 521 [defendant must show that "it is probable that at least one juror would have voted to find him not guilty had the new evidence been presented"].)

The trial court did not abuse its discretion.  Hart has failed to demonstrate a violation of his due process rights.

**B.**

Hart also contends that the trial court erred by failing to grant his motion for new trial on insufficiency of the evidence grounds.  We are not persuaded.

**1.**

In ruling on a motion for new trial under section 1181, subdivision 6, the trial judge independently examines the evidence to determine whether it is sufficient to prove each element beyond a reasonable doubt to his or her satisfaction.  In effect, the trial judge acts as a " '13th juror.' " (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.)  "The trial court has broad discretion in determining whether the evidence has sufficient probative value to sustain the verdict [citation], and its order will not be reversed on appeal 'absent a manifest and unmistakable abuse of that discretion.' " (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1252.)

Our standard of review is the same as that we ordinarily apply to assess sufficiency of the evidence on appeal. (*People v. Watkins* (2012) 55 Cal.4th 999, 1018-1020 & fn. 11.)  When faced with a substantial evidence challenge, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - -that is, evidence which is reasonable, credible, and of solid value - -such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; accord, *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.)  " ' "[W]e must presume the court found every fact and drew

10

every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." ' " (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966–967 (*Martinez*).) "The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296.)

## 2.

Turning the standard of review on its head, Hart focuses on his own testimony and contends J.S.'s account "does not make sense." J.S.'s testimony—that Hart suddenly stabbed him and that J.S. was unarmed—is not inherently improbable, as Hart suggests. (See *People v. Ennis* (2010) 190 Cal.App.4th 721, 729 [to be rejected as inherently improbable, "challenged evidence must be improbable ' "on its face" ' "].) In denying Hart's motion, the trial court explicitly stated that it found J.S.'s account of what occurred in the truck credible. The jury apparently came to the same conclusion. It is not our role to reweigh the evidence or to reevaluate witness credibility. (*Ibid.*; *Martinez, supra,* 51 Cal.App.5th at pp. 966–967.)

Substantial evidence supports the jury's verdict. The trial court did not abuse its discretion in denying the motion for new trial.

## DISPOSITION

The judgment is affirmed.

11

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
SIMONS, J.

A161239